**STATE of Missouri,**
**Plaintiff-Respondent,**

v.

**Charles Arthur HORSEY,**
**Defendant-Appellant.**

**No. 13230.**

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 20, 1984.

Motion for Rehearing or Transfer
Denied Sept. 11, 1984.

Applications to Transfer Denied
Oct. 9, 1984.

John Ashcroft, Atty. Gen., Douglas Lind, Sp. Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Loren R. Honecker, Sherwood, Honecker & Bender, Springfield, for defendant-appellant.

MAUS, Presiding Judge.

A jury found the defendant guilty of six counts of receiving stolen property. § 570.080. In accordance with the verdicts, the court sentenced the defendant to imprisonment for seven years on each count and ordered the terms to run consecutively. The defendant presents four points on appeal.

He does not question the sufficiency of the evidence. Suffice it to say there was an abundance of evidence to establish his guilt upon each count. The defendant concedes the exhibits which are the basis of those counts were found by police officers at the premises at 815 N. Fort Street in Springfield. The officers first searched those premises by virtue of a search warrant authorizing the search of 815 N. Fort Street and 809 N. Fort Street for the drug methamphetamine. That warrant was issued at 11:39 a.m. on October 29, 1981, upon an application made a few minutes earlier.

The execution of that warrant did not discover any methamphetamine. However, in that process the officers observed such a plethora of assorted items of personal property in such condition as to inexorably hold to the conclusion they were stolen. At 6:25 p.m. on October 29, 1981, a warrant was issued authorizing the search of those premises for numerous items of named categories of personal property believed to be stolen. Subsequent search warrants were issued and executed.

The defendant's first point is that the trial court erred in not suppressing and in admitting the exhibits which were the subject matter of the six counts. The point is based upon a contention the first warrant was not valid to authorize a search of the premises at 815 N. Fort and 809 N. Fort. The state concedes the admissibility of those exhibits is dependent upon the validity of the search under that initial warrant. The defendant's contention of invalidity has two bases.

The defendant's first basis is that the affidavits of two Springfield police officers upon which the first search warrant was issued did not establish probable cause. In view of this contention, it is necessary that the substantive parts of those affidavits be set forth.[1]

The affidavits are based upon information provided by an unnamed informant. A two-pronged test for determining whether or not such affidavits supplied probable cause was enunciated in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). It was further developed in *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The defendant relies upon an analysis based upon the test so enunciated and developed.

In attacking the sufficiency of the affidavits, he considers each affidavit separately. Moreover, he focuses upon and considers separately isolated segments of the affidavits. He insists the Clark affidavit is totally without value for two reasons. He says the fact the officer stated the informant had proven reliable is without significance. He also asserts that information supplied concerning a transaction in July of 1981 was "stale."

In regard to the Asher affidavit, he again argues the statement of proven relia-

1. Clark's affidavit stated: In July of 1981 I was contacted by a past proven reliable confidential informant. The informant at that time had given information on several subjects and had assisted me in purchasing drugs from those persons.

At the time I was contacted, the informant advised me that they had been at a residence at 815 North Fort. She advised me that that address belonged to a subject known as Charlie Horsey. She further stated that while at the house she had purchased a drug known as "crank," which is a methamphetamine. She advised me that she had been at the house on two occasions and purchased the drug. She also advised me that she knew several other subjects that regularly purchased the drug at that residence and that Mr. Horsey would either sell the drug for cash or trade it for stolen merchandise.

She described the house as being a goldish-red color with wooden siding and a composition roof being a one story house.

Asher's affidavit stated: On 10/29/81 at approximately 08:30 hours I was contacted by a proven reliable confidential informant who has provided information in the past that has resulted in the filing of felony charges against Horsey, who advised me that Charles Arther [sic] Horsey was selling from a new shipment of "crank," methamphetamine. The informant advised that they had observed a transaction of white powder removed from a plastic bag to a subject, whose name they didn't know, along with a "rig" syringe and needle. The sell [sic] was made by Charlie Horsey.

I was also advised that several others were waiting to purchase "crank" in the living room at 815 North Fort, Springfield, Greene County, Missouri. The transaction took place in the "office," the room located directly north of the living room, and the "crank" and "rig" was removed from a file cabinet; however, drugs have been kept in a floor safe located in a closet within the house, as well as a hidden compartment under the refrigerator in the kitchen.

The informant also stated that in the past stolen merchandise exchanged for the "crank" has been and is kept in a vacant duplex located directly south of 815 North Fort. The address of this duplex is 809 North Fort.

These houses are wood frame; 815 North Fort is a single family dwelling and 809 North Fort is the north side of a duplex, a two family dwelling which is currently vacant. The south duplex, 807 North Fort, is currently occupied by Donnie Allie, a close friend and associate of Charley A. Horsey.

bility is without significance. He likewise would disregard the fact information supplied by the confidential informant had resulted in the filing of felony charges. He concludes that the information in the Asher affidavit is also stale because it does not expressly state the date upon which the sale occurred.

■ The defendant's first point is without merit for several reasons. Even under the "two-pronged test" the associate circuit judge issuing the warrant was entitled to a "common sense" reading of the entire application and supporting affidavits. *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). Assuming the Clark affidavit, considered alone, would be based upon stale information, that does not mean that it is totally without significance when construed with the Asher affidavit. A detailed report that Horsey had been selling or trading drugs in July of 1981 would have some bearing upon the value of an affidavit that he was selling drugs at the same location on October 28, 1981. The statements that the confidential informants were reliable did not stand alone. The Clark affidavit established the informant assisted the officer in purchasing drugs from suspects. The Asher affidavit stated that information provided by the informant resulted in the filing of felony charges. This is significant as it establishes that information so supplied was sufficiently accurate to provide the basis for an officer of the court to believe there was sufficient evidence to convict the defendant. The assertion of the informants' reliability was not unsupported.

■ Further, the defendant's complaint of staleness of the Asher affidavit is without foundation. In essence that affidavit states that Horsey *"was selling from a new shipment of 'crank.'"* A common sense interpretation of that statement in the context of the two affidavits was that Horsey was selling crank at the time the information was supplied, the day the warrant was issued.

■ Each affidavit was based upon personal knowledge of the informant. *State v. Rohrer*, 589 S.W.2d 121 (Mo.App.1979), cert. denied, 445 U.S. 916, 100 S.Ct. 1277, 63 L.Ed.2d 600. A detailed statement of the illegal activity was contained in the Asher affidavit. *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). The affidavits are sufficient under the two-pronged test. Compare *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), 78 A.L.R.2d 233.

■ Further, this point is controlled by two recent cases decided by the United States Supreme Court. They are *United States v. Leon*, — U.S. —, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) and *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Generally, decisions concerning "search and seizure" have not been applied retrospectively. *Desist v. United States*, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1968); *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). However, the term "retrospectively" as used in that context most often has reference to cases in which the judgment was rendered, the availability of appeal exhausted and the time for certiorari elapsed before the date of the decision. *Tehan v. United States ex rel. Shott*, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966). "Under our cases it appears that a change in law will be given effect while a case is on direct review." *Linkletter v. Walker*, supra, 381 U.S. at 627, 85 S.Ct. at 1736, 14 L.Ed.2d at 607; *United States v. Johnson*, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982). However, it has since been determined there is no constitutional obstacle to the adoption of a different date of application. *Johnson v. New Jersey*, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). The factors which have been considered decisive in determining the date of application are reviewed in *Desist v. United States*, supra. Also see Annot., Supreme Court Decision—Retroactivity, 22 L.Ed.2d 821 (1968); Annot., Overruling Decision—Application, 10 A.L.R.3d 1371 (1966). The problem is succinctly analyzed in *Martin v. Wyrick*, 568 F.2d 583 (8th

Cir.1978), cert. denied, 435 U.S. 975, 98 S.Ct. 1623, 56 L.Ed.2d 69. Neither of the two cases referred to expressly declares its date of application. Factors which have often been held decisive in determining the date of application are "practicality" and reliance of law enforcement officers on a previous contrary rule. Consideration of those factors and other factors which have been held decisive leads to the conclusion that *Gates* and *Leon* should be applied to cases pending on direct appeal. It has been held error not to apply the standard of *Illinois v. Gates*, supra, to a case so pending. *Massachusetts v. Upton*, —— U.S. ——, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984). The force of that decision is applicable to establish the date of application of *United States v. Leon*, supra.

*Illinois v. Gates*, supra, found the " 'two-pronged test' has encouraged an excessively technical dissection of informants' tips, with undue attention being focused on isolated issues that cannot sensibly be divorced from the other facts presented to the magistrate." *Illinois v. Gates*, supra, 462 U.S. at ——, 103 S.Ct. at 2330, 76 L.Ed.2d at 545–546. The court continued:

> The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a *fair probability* that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed.

*Illinois v. Gates*, supra, 462 U.S. at ——, 103 S.Ct. at 2332, 76 L.Ed.2d at 548 (emphasis added).

■ In *Massachusetts v. Upton*, supra, the court tersely held that the two-pronged test was not merely refined but was rejected. Probable cause is to be determined by the totality of circumstances analysis. When the Clark and Asher affidavits are so viewed, the associate circuit judge had a substantial basis for concluding that probable cause did exist.

This court would be remiss if it did not also take cognizance of *United States v. Leon*, supra. That case presented the question of "whether the Fourth Amendment exclusionary rule should be modified so as not to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." *United States v. Leon*, supra, —— U.S. at ——, 104 S.Ct. at 3409, 82 L.Ed.2d at 684. The court concluded that it should be so modified.

■ In this case, the warrant was regular on its face. Considered by the objective standard announced in *United States v. Leon*, supra, the officers' reliance on that warrant was reasonable. The admission of the exhibits was not error even if the affidavits, which were not "bare bones" affidavits, were considered to be inadequate to establish probable cause. Id. The defendants first basis for attacking the initial warrant is denied.

■ The defendant's second basis is that the initial search warrant was void because it was excessive in scope. This contention is based upon the fact that the search warrant designated 809 N. Fort as well as 815 N. Fort. The defendant insists the affidavits absolutely do not establish probable cause to search 809 N. Fort. The state argues the affidavits show 809 N. Fort was an integral part of the criminal activity and it was reasonable to conclude there was "a fair probability" that drugs were stored therein.

Irrespective of the latter argument, the defendant's second basis must fail. The exhibits referred to were found in 815 N. Fort. Under the circumstances of this case, even if the affidavits were considered to be inadequate in respect to 809 N. Fort, the initial search warrant was not invalid in toto.

The warrant was not a forbidden "general warrant." Nor did it describe the premises to be searched as an entire building, even though the building was subject to multi-use and occupancy as was true in *United States v. Hinton*, 219 F.2d 324 (7th Cir.1955), a case cited by the defendant. Also see *United States v. Busk*, 693 F.2d 28 (3d Cir.1982); *State v. Randall*, 540 S.W.2d 156 (Mo.App.1976).

Based upon a history of the Fourth Amendment and the exclusionary rule, *United States v. Christine*, 687 F.2d 749 (3d Cir.1982), the doctrine of redaction is applicable. "After examining the purposes of the warrant requirement and the means by which those purposes are served, we conclude that the practice of redaction is fully consistent with the Fourth Amendment and should be utilized to salvage partially invalid warrants." Id. at 750–751. As stated, "From a policy perspective a rule requiring blanket invalidation of overbroad warrants would seem ill advised." *United States v. Riggs*, 690 F.2d 298, 301 (1st Cir.1982).

> Where the search warrant establishes the necessary probable cause to search one distinct person or place but is insufficient to justify the search of another described therein, it has been held, with limitations not applicable to this case, that the valid portion of the warrant may be severed, and the search conducted in accord with the valid portion of the warrant is proper.

*People v. Russell*, 45 Ill.App.3d 961, 4 Ill. Dec. 579, 360 N.E.2d 515, 518 (1977). Also see *People v. Hansen*, 38 N.Y.S.2d 17, 377 N.Y.S.2d 461, 339 N.E.2d 873 (1975); *State v. Halverson*, 21 Wash.App. 35, 584 P.2d 408 (1978).

The limitations referred to in *Russell* have received the following expression. "If the overall tenor of the warrant or search smacks of a general warrant or an abuse of the prospective availability of redaction, then the entire search and seizure may be treated as a single illegality." *United States v. Christine*, supra, at 759. The defendant argues the Springfield officers did not act in good faith with respect to the search at 815 N. Fort and 809 N. Fort. A pattern of bad faith is established, he says, because on November 3, 1981, two different Springfield officers searched the Horsey home in Christian County on the pretext of serving an arrest warrant. He adds that during this pretextual entry, they observed stolen items and were then able to obtain a search warrant. The officers said they had suspected the presence of stolen property there, but hadn't gotten a search warrant because they felt they could not establish probable cause.

In making this argument the defendant does not consider the full background of the incident as shown by the record. Officer Patton was investigating the theft of brass in Springfield. In connection with that brass, a warrant for the defendant's arrest was issued in St. Louis. The authorities there asked Patton to see the warrant was executed at the Horsey home in Christian County. Patton and Coffman went to Christian County and enlisted the aid of Christian County Deputy Sheriff McNeal. They accompanied McNeal into the house to attempt to execute the arrest warrant. They, along with McNeal, did sign affidavits concerning what they saw upon the basis of which a search warrant was issued.

By his assertion, the defendant not only charges the Springfield officers with bad faith, but also the prosecutor, associate circuit judge, Deputy Sheriff McNeal and officers in St. Louis. The fact the defendant was the subject of attention of many law enforcement authorities cannot be said to establish bad faith. That resulted from his own activities. The acknowledgment of the officers of the necessity of a basis for probable cause cannot be said to establish bad faith. There is nothing in the record to cause the overall tenor of the initial warrant or search to smack of a general warrant or to be an abuse of the prospective availability of redaction. The exhibits which were seized in the premises at 815 N. Fort were properly admitted. Moreover, there appears to be no reason why the

doctrine announced in *United States v. Leon*, supra, is not applicable. The defendant's second basis is without merit.

The defendant next contends the trial court erred in admitting a photograph of an air conditioner condenser on the premises at 815 N. Fort. The condenser was seized and the picture was taken pursuant to a warrant issued November 6, 1981, based upon affidavits of Detective Patnaude and James D. Gillenwaters. The defendant summarily discounts the Patnaude affidavit because it states a mere belief the property had been stolen.

 Another detective, aware of the condenser being on those premises, told Gillenwaters of its presence at the location. Gillenwaters went to the premises, entered the yard and by serial numbers identified the condenser as having been stolen from him. The defendant acknowledges the constraints of the Fourth Amendment "are applicable only to intrusions by or at the direction of government agents." *State v. Rife*, 619 S.W.2d 900, 902 (Mo.App.1981). But he asserts the latter detective directed Gillenwaters to make the entry as an agent of the police. The defendant's second point is without merit because there is no evidence of such a direction.

 Such an attack is particularly without foundation as the Gillenwaters' affidavit was unnecessary to the validity of the search warrant of November 6, 1981. By omitting reference thereto, the defendant emphasizes the substance of the Patnaude affidavit. That affidavit establishes that a condenser, smoke detector, combination bathroom heater and light unit and chandelier had been stolen from property owned by Gillenwaters. Patnaude further stated that while executing a previous search warrant, he observed such divers items at 815 N. Fort that were co-mingled with scores of other items of miscellaneous personal property not normally found in a home. Considering the theft of that particular combination of items, their presence at 815 N. Fort has meaning. The Patnaude affidavit is to be considered in a realistic and common sense fashion. *United States v. Ventresca*, supra. When so considered, there was a substantial basis for the associate circuit judge to conclude that probable cause existed. *Illinois v. Gates*, supra.

The defendant's next point of error is based upon the closing argument of the prosecutor. Defense counsel at length argued the prosecutor recommended to the jury a sentence of 42 years in retribution for the defendant's plea of not guilty. Thereafter, the prosecutor argued, "Now, Judge [defense counsel] Clough says forty-two years. No one—everyone knows that no one actually will serve forty-two years." The trial court promptly sustained an objection and directed the jury "to disregard it." A request for a mistrial was denied. The defendant contends this was reversible error.

 In its excellent brief, the state presents a strong argument the prosecutor's remark was not erroneous because it was retaliatory. A similar remark under similar circumstances was found to be retaliatory in *State v. Montgomery*, 592 S.W.2d 284 (Mo.App.1979). Nevertheless, the trial court, apparently because it is generally error to argue the possibility of parole, *State v. Kaempfer*, 342 Mo. 1007, 119 S.W.2d 294 (1938), promptly took action as aforesaid.

The prosecutor did not emphasize the issue of parole as was done in *State v. Lewis*, 443 S.W.2d 186 (Mo.1969). The remark was more in the nature of a brief reference as in *State v. Murphy*, 592 S.W.2d 727 (Mo. banc 1979). The evidence of the defendant's guilt was crushing and the extent of his criminal activity was staggering. It cannot be said that this brief reference at the end of a four-day trial had a decisive affect. *State v. Murphy*, supra. A mistrial is a drastic remedy to be used with caution under extraordinary circumstances. *State v. Gilbert*, 636 S.W.2d 940 (Mo. banc 1982). Even assuming the remark was not retaliatory, which this court does not hold, the trial court did not abuse its discretion in determining a mistrial was not required. *State v. Rasberry*, 452 S.W.2d 169 (Mo.1970).

 By his final point the defendant contends the trial court was required to

declare a mistrial because of an unsolicited remark of a witness. After identifying her stolen property, upon leaving the stand, that witness in passing said to the defendant, "I hope you get what you deserve." The defendant's motion for a mistrial was denied.

The court then individually examined the twelve jurors and two alternate jurors. Five jurors heard nothing. Four jurors heard something, but could distinguish no part of the remark. Two jurors heard part of and three jurors heard all of the remark. Each of the latter nine jurors said they discounted the remark and would give no weight to it. The trial court was in the best position to determine if the drastic remedy of a mistrial was required. *State v. Lira,* 372 S.W.2d 80 (Mo.1963). Following his careful examination of the jurors, the able and experienced trial judge determined the remark would not result in prejudice to the defendant. *State v. Edward,* 637 S.W.2d 27 (Mo.1982). The trial court did not abuse its discretion in making that determination and denying a mistrial. The judgment is affirmed.

HOGAN and PREWITT, JJ., concur.