STATE of Missouri,
Plaintiff–Respondent,

v.

Dwain L. GARDNER,
Defendant–Appellant.

No. 69169.

Supreme Court of Missouri,
En Banc.

Nov. 17, 1987.

Rehearing Denied Dec. 15, 1987.

2

M. Elise Branyan, T. Patrick Deaton, Springfield, for defendant-appellant.

William L. Webster, Atty. Gen., Timothy W. Anderson, Asst. Atty. Gen., Jefferson City, Thomas E. Mountjoy, Pros. Atty., Richard E. Monroe, Chief Asst. Pros. Atty., Springfield, for plaintiff-respondent.

HIGGINS, Judge.

Dwain Gardner was convicted by a jury of twenty-one counts of receiving stolen property of the value of over $150, section 570.080.1, RSMo 1978. The court determined that defendant was a prior offender and sentenced him to twenty-eight years in the Department of Corrections. Judgment was rendered accordingly.

The Missouri Court of Appeals, Southern District, reversed the judgment and remanded the cause to the trial court with direction to vacate twenty of defendant's twenty-one convictions and sentences on double jeopardy grounds. This Court

transferred the case because of the general interest and importance of the double jeopardy issue. Affirmed.

Gardner was charged with twenty-one counts of receiving stolen property of the value of over $150, in violation of 570.080.1, RSMo 1978. Each count charged that defendant, in violation of section 570.080, RSMo 1978, committed the Class C felony of receiving stolen property in that on or about the 14th day of March 1984, Dwain Gardner, with the purpose to deprive a specified owner of certain property, kept such property, of an aggregate value of at least $150, knowing or believing that it had been stolen. Each count named a particular owner and described different property. The property, in all, consisted of thirty-two pages of items that the police recovered from defendant's home on March 14, 1984, as the result of a validly executed search warrant.

The State called twenty-six witnesses to testify regarding property stolen in twenty-one burglaries that occurred over a period of seven months prior to March 14, 1984. The state also called Steven Agee. He testified that defendant was his "fence" and that he visited defendant at his home "just about every day" to sell him various lots of stolen property. Agee had entered into a plea bargain with the State to receive a lighter sentence on three Cole County burglary charges in return for his testimony against defendant. The State's last witness was David Asher, who was responsible for securing and executing the search warrant on March 14, 1984, at 2:49 a.m. at defendant's residence.

Appellant presents five issues on this appeal. The Southern District found them meritless with the exception of the double jeopardy claim which sustained a determination that the State's charge against defendant justified conviction on only one count of receiving stolen property and not multiple counts as the State contends.

■ Appellant first asserts that the trial court erred in overruling defendant's motion to suppress statements because his statement "I don't guess I'll be getting out for a long time after this one," violated his rights to remain silent and due process of law protected by the 5th and 14th amendments of the United States Constitution and article I, section 10 and 19 of the Missouri Constitution. Appellant claims the statement was a fruit of an arrest without probable cause and of the illegal search and seizure of items from his home, car and person.

The detective stated that defendant made the spontaneous remark after he was read his Miranda rights. The State contends the statement was voluntary and spontaneous and incident to a valid arrest of defendant. Defendant was arrested when he drove up to his house with Steven Agee during the conduct of the search authorized by warrant. The police officers did not question defendant.

Defendant's motion to suppress was denied before trial. During trial when the statement was entered, defendant did not object. A motion to suppress evidence prior to trial is interlocutory in nature. The real damage is not done until the evidence is introduced in the trial of a case for consideration by a jury. Then a trial court can receive additional evidence and change its ruling prior to admitting the objected to items in evidence before a jury. *State v. Carrico*, 696 S.W.2d 511, 513 (Mo.App. 1985), quoting *State v. Howell*, 524 S.W.2d 11, 19 (Mo. banc 1975). Defendant failed to preserve this point for review.

■ Review under the plain error standard requires that appellant suffer manifest injustice, Rule 30.20. The record does not indicate any manifest injustice occurring to defendant. The police read him his rights. They asked no questions of defendant and at that point defendant made a spontaneous, voluntary statement. Statements voluntarily and spontaneously made by a defendant not under interrogation have been held to be admissible, *State v. Kent*, 697 S.W.2d 216, 217–18 (Mo.App. 1985). The voluntariness of a statement is determined by evaluating all the circumstances under which the statement was made, *State v. Thomas*, 698 S.W.2d 942 (Mo.App.1985). The record indicates defendant's statement occurred after proba-

ble cause to arrest, he was read his rights and he was not being interrogated at the time he made the statement. The statement was voluntary, spontaneous and admitted properly.

■ Appellant contends that trial court erred in failure to recuse himself. Appellant requested the trial judge recuse himself on June 24, 1985, the day trial was to begin. Defendant also filed a motion in limine and a motion to suppress evidence which were heard on the same day. The judge refused to recuse himself and overruled defendant's motions.

Defendant, as a matter of right, could have requested a change of judge by written application not later than 30 days after arraignment if the trial judge is designated. If not designated, then the application must be filed no later than 30 days after the designation of the trial judge and notification to the parties or their attorneys. The applicant need not allege or prove any reason for such change. Rule 32.07. Defendant did not follow this procedure.

Defendant requested recusal because the trial judge issued a search warrant a week after defendant's arrest for a further search of defendant's home based on new police evidence. Defendant alleges the police officers requesting the search warrant had ex parte discussions with the judge concerning the case about the guilt of defendant and that the judge cannot fairly rule the motion to suppress evidence concerning the issuance of the search warrant. Also, the defendant contends he intended to call the judge as a witness for the motion to suppress evidence and argues the judge cannot sit as both witness and judge in the same case.

The reasons for disqualification are present if the judge is related to any defendant or has an interest in or has been counsel in the criminal proceedings or disqualifies himself for any other reason. Rule 32.10. The standard is fundamental fairness, Rule 32.09. Also under the Code of Judicial Conduct, Canon 3(C), Disqualification, a judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where because of the judge's knowledge, he is likely to be a material witness in the proceeding, or he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

Defendant has not met his burden. First, there are no facts alleged that show bias or prejudice against the defendant. Second, there is no fact alleged that would lead a reasonable person to believe that the judge was to be called as a witness or that he was a material witness in the case. Becoming a witness at all would hinge on granting of the motion to suppress. However, the procedural posture of this motion is for the court to make a determination concerning the validity of the search warrant. If the court determines from the face of the document that the warrant is valid no hearing is necessary and the judge will not possibly be called as a witness. If the court finds they are invalid, there would then be a determination on whether the officers acted in good faith. The court found the warrant was valid and overruled the motion to suppress the evidence.

Defendant cannot claim he intended to call the judge as a witness in order to have the judge disqualify himself. Had he followed Rule 32.07 he would have been entitled to a change of judge as a matter of right. Instead, defendant chose to request recusal on the day of trial without substantiating his request with valid claims. The alleged error is not demonstrated.

■ Appellant's principal charge is that the trial court erred in overruling defendant's motion for judgment of acquittal at the close of all the evidence as to all but one count of receiving stolen property because appellant's conviction and sentences on twenty additional counts violated his freedom from double jeopardy guaranteed by the 5th amendment to the United States Constitution. Appellant alleges the State failed to prove more than one act of receiving stolen property by keeping so that defendant's convictions on all twenty-one counts prejudiced him with multiple sen-

tences for one offense of receiving stolen property by keeping.

The evidence showed that the property was stolen from different owners, at different times, by a burglar who in turn sold the stolen goods at various times to Gardner. The State did not charge defendant with multiple counts on different dates, but instead used the date of the offenses as on or about the date the search warrants were executed. Appellant claims his right to be free from double jeopardy was violated by the State charging multiple possession of stolen goods when it was a single act; therefore, he received cumulative punishments for the same offense and should be discharged accordingly.

Section 570.080 established the single crime of receiving stolen property which may be committed by doing any of the several prohibited acts: receiving, retaining or disposing of property knowing or believing it to be stolen. *State ex. rel. Westfall v. Campbell*, 637 S.W.2d 94, 97–98 (Mo.App.1982). A single act of receiving stolen property in one transaction has been held to be but one crime and not divisible into separate crimes because the stolen property belonged to different owners, *Gilmore v. State*, 710 S.W.2d 355 (Mo.App. 1986).

*Gilmore* is distinguishable because in *Gilmore* defendant received the separately stolen items at the same time from the same source and in the same transaction, *Gilmore*, 710 S.W.2d at 358. In this case, defendant had property from twenty-one different owners that was received from at least one source at different times, all of which was confiscated by the police on one date. The evidence introduced at trial was proof that there was not one transaction, as in *Gilmore*, but at least twenty-one different occasions where defendant received and retained stolen property. The jury was instructed that if it found defendant had retained such specifically listed stolen property on the day the search warrant was executed, it could find him guilty of up to twenty-one counts of receiving stolen property. This is not one transaction as

argued by appellant because the evidence introduced at trial proved otherwise.

In *Green v. State*, 721 S.W.2d 197 (Mo. App.1986), the court held that a defendant charged by information with eleven counts of receiving stolen property at one time, July 2, 1982, the day the search warrant was executed, was a single act that was not divisible into separate crimes merely because the property was stolen at different times from different people, *State ex rel. Westfall v. Campbell*, 637 S.W.2d at 97; *Green*, 721 S.W.2d at 199. Green did not dispute that the property was stolen from a number of owners on different dates and that all of the stolen property was in his possession on July 2, 1982, when it was discovered by law enforcement officers in a search pursuant to a warrant.

While receiving different articles of stolen property, at different times on separate and unconnected occasions, constitutes separate crimes, even where all of the property is afterward found in the possession of the defendant at the same time and place, 66 Am.Jur.2d, Receiving Stolen Property, 293 at p. 305, by charging a defendant with receiving all of the stolen property on one date in an information, the offense is then a single act that is not divisible into separate crimes. *Id.*

The present case is not the same as *Gilmore* where defendant received all the stolen property from one source in one transaction. Here defendant clearly received the stolen property on numerous different occasions, from different owners and from one source. The State set out the list of specific property stolen from the owners in each of the twenty-one counts and stated that it was retained on or about the same day, which was the day the search warrant was executed. There was not one aggregate list of stolen property listed in the information or the jury instructions, but twenty-one different counts of specific property identified by owners as stolen from their homes during a six-month period.

Defendant was put on notice of the charges against him and cannot complain that he had no opportunity to prepare

a defense. The State listed seventy-two witnesses that might appear and twenty-six of those were owners of separate lots of the stolen property. There was no doubt that defendant understood the charges against him and had notice with which to prepare a defense on twenty-one counts of receiving stolen property. The State might better have charged defendant with receiving stolen property on different occasions, listing the date of each and a description of the property received, and introduced proof on those issues on separate counts which, if proper instructions were given, would justify multiple convictions. However, no indictment or information shall be deemed invalid, nor shall the trial, judgment or other proceedings thereon be stayed, arrested or in any manner affected: (5) for omitting to state the time at which the offense was committed, in any case where time is not of the essence of the offense; nor (6) for stating the time imperfectly; nor (7) for stating the offense to have been committed on a day subsequent to the finding of the indictment or information, or an impossible day, or on a day that never happened. 545.030 RSMo 1986. The State could have charged defendant with multiple offenses of receiving stolen property using dates to the best of its knowledge and the information would have been valid, but this was not necessary. The variance between an allegation in the information that the offense was committed on "the ____ day of September" and proof that it was committed in October does not invalidate a conviction for receiving stolen goods, as to which time was not an element of the offense where the evidence showed it was committed within the period of limitations, *State v. Glazebrook,* 242 S.W. 928 (Mo. 1922). An information will not be quashed for times which are not exact unless time is of the essence for that particular crime. *State v. Murray,* 609 S.W.2d 192 (Mo.App. 1980).

The State in this case had numerous witnesses and evidence to prove that defendant committed multiple offenses of receiving stolen property and specifically listed the property stolen from each of the various owners in each of the twenty-one counts. Defendant had notice and therefore cannot claim his right to be free from jeopardy was violated, nor can he claim the information incorrectly set out the multiple offenses against him. A sufficient indictment or information is an indispensable prerequisite to a valid verdict, judgment and sentence, *State v. DiLiberto,* 537 S.W. 2d 671 (Mo.App.1976); Rule 24.01. Here the requirement was satisfied.

To the extent this opinion conflicts with *Gilmore* and *Green,* those cases are no longer to be followed under the facts of this case on the double jeopardy issue. In *Gilmore,* an informant told police defendant had stolen property in his house. A search warrant was issued and the stolen property recovered. It is not known from the record how the information listed the five separate offenses of receiving stolen property, but as in this case, had there been proof by the State that defendant received stolen property on different dates (other than the one listed in the information), from different owners, he could have been found guilty of multiple offenses of receiving stolen property as long as the time period was within the statute of limitations. Time is not the critical element of proving the offense of receiving stolen property, as stated above. To be guilty of receiving stolen property, defendant must receive stolen property with the purpose to deprive the owner of his interest with the knowledge or belief that property had been stolen, section 570.080, RSMo 1978. It is not clear from the record that Gilmore received possession of all the stolen property at one time, other than that the property was found all at the same time in defendant's home as a result of a validly executed search warrant.

*Green* is similar to this case. Each of the receiving stolen property counts stated that Green, on July 2, 1982, with the purpose of depriving the owner, kept such property of an aggregate value of at least $150, knowing or believing it to be stolen. It is not stated if specific stolen property was listed for each count, but both *Green* and this case occurred in Greene County, both used informations to charge the de-

fendant, and the format was likely the same. The Southern District found that although there was no dispute that the property was stolen from a number of different owners on different dates, because the information stated he received all of the stolen property at one time the act was therefore a single act and not divisible. This reasoning is flawed because time is not of the essence for the crime of receiving stolen property and defendant, if the facts were similar to the present case, was put on notice as to what charges he had to defend. There was no defect within the information that prejudiced the substantial rights of the defendant in *Gardner* or in *Green* (if the case was similarly charged and prosecuted). Rule 23.11. *Green*, therefore, is no longer valid as to this double jeopardy argument.

■ Appellant alleges that the trial court erred in overruling his motion to suppress evidence because the admission of evidence seized with four search warrants violated his right to be free from unreasonable searches and seizures protected by the 4th and 14th amendments to the United States Constitution and article 1, section 10 and 15 of the Missouri Constitution. Appellant argues the first search warrant was invalid for want of probable cause and particularity and exceeded the scope of the first warrant by beginning the search in the defendant's bedroom for mechanic's hand tools and vehicular parts. He then alleges that the fruits of the unlawful search were used to obtain three additional search warrants that also failed to state with particularity the items to be seized, to arrest and search defendant's automobile and person and as evidence at trial on all twenty-one counts of receiving stolen property.

Validity of the search warrant is measured by circumstances existing at time it was issued; character of the warrant is not changed by what the execution discloses. *State v. Wallace*, 593 S.W.2d 545 (Mo.App. 1979).

Two affidavits were submitted in support of the complaint which resulted in the issuance of the search warrant in question. The first affidavit set forth evidence which had been obtained by personal observation, surveillance by other officers and information from an FBI agent which led the police officers to believe that stolen merchandise was being stored at defendant's residence and that a "chop shop" was being operated there. The second affidavit set forth the source of the police officer's knowledge, his personal observations of suspicious activities in conjunction with a burglary unit and information received from Tulsa and the FBI. Appellant alleges the supporting affidavits fail to sufficiently detail information, demonstrate the basis for officer's knowledge and for failing to link defendant with criminal activity.

The test for determining whether probable cause has been established for issuance of a search warrant is the totality of the circumstances standard decided in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), which was followed in Missouri in *State v. Horsey*, 676 S.W.2d 847 (Mo.App.1984).

> The task of issuing magistrate is simply to make a practical, common sense decision whether given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to insure that the magistrate had a substantial basis for ... concluding that probable cause existed.

*Gates*, 462 U.S. at 238–239, 103 S.Ct. at 2332, 76 L.Ed.2d at 548; *Horsey* 676 S.W. 2d at 852.

The affidavits supporting the four search warrants issued in this case sufficiently stated evidence upon which a judge could decide to issue them. The test for probable cause to issue the warrants as stated in *Gates* and *Horsey* was met. The affidavits set out with specificity the reasons the officers were requesting a search warrant of the defendant's home. The affidavits also displayed a multifaceted investigation with defendant getting caught in its web.

Appellant's 4th amendment rights to be free from unlawful searches and seizures was not violated.

In *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), another dimension was added to the *Gates* totality of the circumstances test by what is generally referred to as the good faith exception to the 4th amendment exclusionary rule. *State v. Murphy*, 693 S.W.2d 255 (Mo.App.1985). The Supreme Court departed from the rigid application of the exclusionary rule on the firm belief that "when law enforcement officers have acted in objective good faith or if their transgressions have been minor, the magnitude of the benefit conferred on such guilty defendants offends basic concepts of the criminal justice system." *Murphy*, 693 S.W.2d at 265, quoting *U.S. v. Leon*, 468 U.S. at 909, 104 S.Ct. at 3413. Certainly the officers met this standard assuming arguendo that a transgression occurred.

Appellant claims the first warrant was not sufficiently particular. The first search warrant was issued for mechanic's hand tools, such as wrenches, sockets, cutting instruments, screwdrivers, and etc.; vehicles described in attached affidavits used to transport and store stolen vehicles' parts, which includes but is not limited to batteries, transmissions, engines, rear ends, etc., removed from stolen vehicles. These vehicles include cars, pickups and tractor trailer units. The police contend that due to the easy concealment of many of the items listed in the warrant, the officers were justified in conducting a thorough search of defendant's home. It is patent that the particularity requirement of the 4th amendment is to preclude broad general searches that know no bounds or limits and which inherently smack of unreasonableness, *Andersen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976), and *Marron v. U.S.,* 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927), quoted in *Murphy* at 266. Practical accuracy in description govern over technical precision and the particularity requirement is met if a description is sufficiently definite to enable an executing officer to reasonably identify the place to be searched. *Steele v. U.S.,* 267 U.S. 498, 503–4, 45 S.Ct. 414, 416, 69 L.Ed. 757 (1925); *U.S. v. Williams,* 687 F.2d 290 292 (9th Cir.1982), quoted in *Murphy* at 266. The search was conducted with sufficient particularity to meet the test of specificity outlined above and in conjunction with the good faith exception laid down in *U.S. v. Leon* convinces this Court the lack of particularity asserted by appellant does not justify application of the exclusionary rule. The tools were easily concealed anywhere in the house and the police were justified in conducting a thorough and careful search of defendant's residence for the items. When contraband and other possible stolen items were discovered, the officers immediately went to the Court to request two additional search warrants which was indicative of their intention to act in a lawful manner. A final warrant was obtained one week later based on the observation of a searching officer and his review of burglary reports in the Springfield Police Department. Again this displayed the officer's sense of duty and attention to detail. The warrants were issued with sufficient particularity and there is no showing that their scope was exceeded or that they violated defendant's expectation of privacy in his home, his car or his person after he was arrested.

Validity of the search warrants coupled with defendant's spontaneous statement indicating knowledge of having committed a crime gave the police the right to arrest the defendant. Probable cause to make an arrest depends upon knowledge of facts and circumstances sufficient for a prudent person to believe that the suspect is committing or has committed an offense and is determined not on hindsight of legal technicians but on practical considerations of everyday life on which reasonable persons act. *State v. Smith,* 681 S.W.2d 518, 521 (Mo.App.1984). Finding contraband and stolen property on defendant's premises, combined with information from ongoing investigations of both the Springfield Police Department and the FBI would lead a reasonable person to arrest defendant upon his arrival at his home during the search. There was probable cause to be-

lieve that the defendant committed an offense.

Appellant alleges the trial court erred in overruling defendant's motion for judgment of acquittal at the close of the State's evidence because the State violated appellant's rights to due process and equal protection of law as guaranteed by the 5th and 14th amendments to the United States Constitution and by article 1, section 12 and 10 of the Missouri Constitution. Appellant alleges that the State did not make submissible cases on all counts by failing to prove an element of the alleged counts of receiving stolen property because at the time he retained the property defendant did not know or believe that it had been stolen.

In order to prove the offense of receiving stolen property, the State bears the burden of proving beyond a reasonable doubt that defendant received stolen property with the purpose to deprive the owner of his interest and with knowledge or belief that the property has been stolen. *Gilmore v. State*, 710 S.W.2d 355 (Mo.App. 1986); 570.080, RSMo 1978.

Defendant did not present any evidence at trial; his defense was an attack on the credibility of the State's witness, Steven Agee. Appellant alleges that Agee could not recall anything about the victim's name or address related to the counts, could not connect defendant with property listed in several counts, recalled committing a burglary but did not recall what he stole or what he did with the property he remembered stealing and could not remember having conversations with defendant about the property that had been stolen or could not remember the date and time he took property to defendant. Therefore appellant contends the State did not prove beyond a reasonable doubt that defendant retained property with the knowledge or belief that it was stolen.

Direct evidence of defendant's knowledge or belief is not required and it may be proved from the facts and circumstances in evidence. *State v. McCoy*, 647 S.W.2d 862, 865 (Mo.App.1983). Section 570.080.2(1), (2) & (3), RSMo 1978, states that evidence of the following is admissible in any criminal prosecution under this section to prove the requisite knowledge or belief of the alleged receiver:

(1) That he was found in possession or control of other property stolen on separate occasions from two or more persons;

(2) That he received other stolen property in another transaction within the year preceding the transaction charged;

(3) That he acquired the stolen property for a consideration which he knew was far below its reasonable value.

The State introduced evidence from twenty-six property owners who identified that their property was stolen at different times and different locations. The State produced Steven Agee, who testified that he visited defendant almost every day with stolen property to sell to defendant. The State also introduced defendant's spontaneous statement shortly after his arrest at his home while the search warrants were being executed, where he stated, "I don't guess I'll be getting out for a long time after this one," which went to show his knowledge of the stolen character of the goods. This evidence supported a reasonable inference that defendant knew or believed the property was stolen.

Appellant emphasizes that unexplained possession of recently stolen property does not give rise to an inference that the possessor is guilty of receiving stolen property, *State v. Davis*, 607 S.W.2d 149 (Mo. banc 1980). It is, however, a circumstance that the jury is entitled to consider together with the other facts and circumstances in the case. *State v. Sours*, 633 S.W.2d 255, 258 (Mo.App.1982).

In testing the sufficiency of the evidence, the court accepts the State's evidence as true and gives the State the benefit of all reasonable inferences while disregarding all evidence and inferences to the contrary. *State v. Turner*, 623 S.W.2d 4, 6 (Mo. banc 1981), *cert. denied*, 456 U.S. 931, 102 S.Ct. 1982, 72 L.Ed.2d 448 (1982). Under the requirements of 570.080.1 and 2, RSMo 1978, and an evaluation of the evidence the State introduced, both direct and circumstantial, the requirement that de-

fendant must know or believe the property to be stolen has been proven beyond a reasonable doubt.

The judgment is affirmed.

BILLINGS, C.J., and ROBERTSON and RENDLEN, JJ., concur.

BLACKMAR, J., concurs in separate opinion filed.

DONNELLY, J., concurs in result.

WELLIVER, J., not participating.

BLACKMAR, Judge, concurring.

There is ample support in the record for the trial judge's conclusion that the several search warrants were facially regular, that the descriptions were adequate, and that there was probable cause for issuance. As the principal opinion points out, the officers were scrupulous in their efforts to comply with the law. I see no need to discuss the so-called "good faith" test of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), or to decide whether such a test is appropriate under Art. I, Sec. 15, of the Missouri Constitution. *See State v. Munson*, 714 S.W.2d 515, 524 (Mo. banc 1986).

In all other respects I concur with the principal opinion and in the judgment of affirmance.