**STATE of Missouri, Respondent,**

v.

**Earl J. HOLLAND, Appellant.**

**No. 55082.**

Missouri Court of Appeals,
Eastern District,
Southern Division.

Dec. 19, 1989.

---

John Dennis Rayfield, Crystal City, for appellant.

William L. Webster, Atty. Gen., Douglas M. Ommen, Asst. Atty. Gen., Jefferson City, for respondent.

CARL R. GAERTNER, Presiding Judge.

Defendant appeals his jury conviction of three counts of felony stealing in violation of Section 570.030, RSMo.1986, on which he was sentenced to consecutive seven year terms of imprisonment and fines of Five Thousand Dollars on each count. We affirm.

The evidence adduced at trial revealed that defendant was a real estate broker, doing business as Holland House Realty and Investment Company, Inc. (Holland House). In the course of his business he either bought property through the corporation to resell or he offered a listing service and received commissions from those sales. Much of the real estate defendant purchased for resale was located at Rocky Ridge Ranch in Ste. Genevieve County, Missouri.

Count One involved the following transaction. In June, 1985, James Beckerman wanted to sell his house at Rocky Ridge Ranch and listed the house with defendant. Defendant then located a buyer, Pauline Higgins. Higgins signed a contract to buy the house on September 15, 1985, and gave defendant a Five Hundred Dollar ($500.00) deposit at that time. The closing was set for October 5, 1985, and at that time Higgins gave defendant two checks with which to complete the sale. One check was for approximately Twenty-nine Thousand Five Hundred Dollars ($29,500) and the other for approximately Five Thousand ($5,000) Dollars. Defendant placed the Five Thousand Dollar ($5,000) check in the Holland House escrow account, and deposited the other check into Holland House's regular corporate account. Within two weeks both accounts were nearly dissipated, but none of the money was expended in connection with the Beckerman–Higgins sale. At no time did Higgins authorize defendant to use the money except in connection with the purchase of Beckerman's house.

The facts leading to the second count began on July 8, 1985, when James and Carmaline Hammond signed a contract to buy a cabin at Rocky Ridge Ranch. In exchange for the cabin, the Hammonds gave defendant a cabin and lot worth Nine Thousand Dollars ($9,000), a lot at Rocky Ridge worth Three Thousand Dollars ($3,000), and a boat worth Two Thousand Five Hundred Dollars ($2,500). Defendant represented the title to the new cabin was free and clear. The truth was defendant had encumbered the property with a deed of trust to secure a loan made to him for Four Thousand Six Hundred Thirty-six Dollars and Sixty-four Cents ($4,636.64) just five weeks prior to the Hammond sale. In May, 1986, the Hammonds were contacted by the bank that held the deed of trust. In order to retain ownership of their cabin, the Hammonds paid the bank approximately Five Thousand One Hundred Dollars ($5,100), the balance of the loan plus interest.

The facts surrounding the third count involved a transaction with James and Eleanor Cummings. The Cummings signed a contract to purchase a home from defendant at Rocky Ridge Ranch. In exchange for the home defendant received from the Cummings a Fifteen Thousand Dollar ($15,000) cabin, Twenty-one Thousand Dollars ($21,000) cash, and a promissory note for Four Thousand Dollars ($4,000). Defendant represented the house to be free and clear of encumbrances. The Cummings paid the note off in May, 1984, and received from defendant a general warranty deed for the house. The property, however, was encumbered by two deeds of trust securing two loans made to Holland House. One loan was made on January 12, 1981, for Twenty-seven Thousand Dollars ($27,000), and the other was made on June 17, 1983, for Twenty-two Thousand Dollars ($22,000). Those loans were foreclosed on in October of 1987, and the Cummings lost their home.

Defendant raises five points on appeal, the first three of which relate to the introduction of certain evidence.

In his first point, defendant argues that the introduction at trial of a copy of a rights waiver form used by Deputy Claussen of the Ste. Genevieve County Sheriff's Department in questioning defendant was improper because no foundation was laid and it violated the best evidence rule. We disagree for two reasons. First, the best evidence rule applies where the contents of a writing are in issue and the secondary evidence is offered to establish the terms of the writing. *Lewis v. Bucyrus–Erie, Inc.*, 622 S.W.2d 920, 924 (Mo. banc 1981); *State v. Curry*, 473 S.W.2d 747, 748 (Mo.1971). Here, there was no dispute regarding the contents of the rights waiver form. Moreover, Deputy Claussen testified without objection to his administration of the Miranda Warnings to defendant and to the latter's response to each of the questions on the form. The best evidence rule does not apply where the facts contained in the documentary evidence are independently proven. *Guthrie v. Missouri Methodist Hosp.*, 706 S.W.2d 938, 943 (Mo.App.1986); *State v. Prince*, 628 S.W.2d 920, 921 (Mo.App.1982).

For the same reasons we find no merit in defendant's complaint of trial court error in the admission of copies of two checks written by Pauline Higgins to complete the purchase of the Beckerman property. Additionally, defendant testified at length concerning these checks and admitted depositing them in his corporate bank accounts and using the proceeds to pay corporate expenses. Reversible error cannot be predicated upon the admission of evidence which the defendant later confirms by his own testimony. *State v. Smith*, 679 S.W.2d 424, 427 (Mo.App.1984).

Defendant also alleges error in the admission of evidence of the transcript of his taped statement to Deputy Claussen because of lack of foundation and violation of the best evidence rule. On appeal defendant argues that the evidence regarding the tape recording from which the transcript was taken failed to meet all of the requirements set forth in *State v. Spica*, 389 S.W.2d 35, 44 (Mo.1965) for the admission of such evidence. At trial, defendant's objection consisted of the bare generalization "there has been no proper foundation." In *State v. Cannady*, 660 S.W.2d 33, 35 (Mo.App.1983) we held an objection, "lack of foundation, subject to my cross," inadequate to preserve the matter for review as it was "not sufficiently specific to alert the trial court to the grounds of excluding the evidence." In *State v. Jones*, 569 S.W.2d 15, 16 (Mo.App.1978) we noted "[i]t is particularly important that where an inadequate foundation had been laid for admission of evidence that the objection made be specific as such foundation deficiencies can frequently be remedied."

At trial no objection concerning a best evidence rule violation regarding the transcript was made at all. Moreover, having at defendant's request deleted prejudicial portions of the tape recording, the trial court was well within the parameters of its discretion to consider the tape to be "unavailable" evidence, and in allowing as secondary evidence the transcript with the prejudical content deleted as a precautionary measure to protect the defendant. *See State v. King*, 557 S.W.2d 51, 54 (Mo.App. 1977). Furthermore, because there was no substantial difference between the content of the transcript and defendant's subsequent testimony, he fails to demonstrate any prejudice warranting reversal. *State v. Schwendt*, 645 S.W.2d 385, 387 (Mo.App. 1983).

Defendant next contends the trial court erred in overruling his motion to dismiss Count III of the information, the Cummings transaction, as barred by the three-year statute of limitations, § 556.036.2(1) RSMo.1986. The information, filed June 2, 1987, alleged that defendant appropriated money continuously from the Cummings from April 20, 1981, through May 14, 1984, and that

the statute of limitations has not run on Count III pursuant to § 556.036 RSMo. 1986 because a material element of the

charged felony is fraud and the offenses were not known to the aggrieved persons until on or about October 10, 1986, nor to the Attorney General until November 4, 1986.

Section 556.036.3(1) provides for an extension of the period of limitations for an offense in which fraud or a breach of fiduciary obligation is a material element for one year after the discovery of the offense by an aggrieved party or by the Attorney General, prosecuting attorney or circuit attorney having jurisdiction. The gist of the offense charged in Count III was defendant's fraudulent misrepresentation that the property sold to the Cummings was "free and clear". The evidence disclosed that the Cummings, the aggrieved parties, first learned the property was encumbered by two deeds of trust held by Boatman's Bank to secure loans made to Holland House in October 1986, when notified by the bank. This information was first given to the Attorney General on November 4, 1986. Thus, although the original information was filed 3 years, and 17 days after the conclusion of the conduct constituting the offense, the prosecution was commenced within one-year after the discovery of the fraud by the aggrieved parties and the Attorney General.

■ Defendant's fifth and final point on appeal alleges the trial court erred in admitting certain documents because they were obtained by an illegal search made pursuant to a warrant. Before trial defendant challenged the warrant in a motion to suppress and the trial court granted a hearing to determine probable cause and particularity. Defendant's motion was thereafter overruled.

■ Defendant asserts the search warrant was not based upon probable cause because the supporting affidavits contained hearsay and mere recitals of belief without facts. No warrant shall issue but upon probable cause. U.S. Const. amend. IV; Mo. Const. art. I, § 15. Probable cause is determined by looking to the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *State v. Horsey*, 676 S.W.2d 847 (Mo.App. 1984). In deciding whether sufficient probable cause exists to issue a search warrant,

> "The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed."

*Illinois v. Gates*, 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548. The issuing judge's determination of probable cause is given great deference by a reviewing court. *State v. Bible*, 750 S.W.2d 676, 680 (Mo. App.1988); *State v. Hodges*, 705 S.W.2d 585, 588 (Mo.App.1986). Given the "... Fourth Amendment's strong preference for searches conducted pursuant to a warrant[,] Courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner." *Illinois v. Gates*, 462 U.S. at 236, 103 S.Ct. at 2331, 76 L.Ed.2d at 547, *quoting U.S. v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689 (1965).

Defendant asserts that the affidavit of Investigator Barbara Waddell of the Missouri Real Estate Commission is merely a recital of belief without facts. In support of this he states Investigator Waddell swore in her affidavit dated February 10, 1987, that she had "reason to believe" the evidence was located at the address given in the warrant and her affidavit because defendant, as a licensed real estate broker, was required to keep such materials. Defendant argues that because Investigator Waddell did not state any reason for her belief that the materials would be at the address in the same paragraph there was not probable cause.

Our reading of the affidavit does not comport with defendant's. Taken in totality, as we must under the teaching of *Illinois v. Gates* and its progeny, it is clear Investigator Waddell's assertions are based on personal knowledge gleaned from her audit of defendant's files.

She sets out the following facts in several paragraphs: she conducted an audit in her official capacity in November, 1986, she personally saw the evidence sought under the warrant at the listed address, that she had reason to believe the property was there because as a licensed real estate broker defendant was required to maintain those materials, and defendant was a licensed broker until February 2, 1987. The affidavit is dated February 10, 1987. "[A]ffidavits ... are governed by less rigorous standards than those governing admissibility of evidence at trial." *State v. Pennington*, 642 S.W.2d 646, 648 (Mo. 1983). Only a showing of a probability, not prima facie proof, is required. *Id.* We do not feel the time period between February 2, 1987, the date defendant lost his license, and February 10, 1987, the date of the affidavit, is so attenuated as to foreclose probable cause that the records would still be at the address shown on the warrant and the affidavit.

■ Defendant also claims the affidavit of Investigator Charles Shipley of the Attorney General's Office is likewise deficient because it contains bare allegations and is based on hearsay. Hearsay may be a proper way to establish probable cause, *Spinelli v. U.S.*, 393 U.S. 410, 412, 89 S.Ct. 584, 587, 21 L.Ed.2d 637, 641 (1969), if a substantial basis for believing the hearsay is established by showing the source acquired the facts sworn to through personal observation and if the facts are corroborated. *State v. Ambrosio*, 632 S.W.2d 262, 265 (Mo.App.1982). Here, Investigator Shipley's affidavit not only shows how his sources acquired their information, but sets forth the actual sources, his personal observations, and describes in detail seven transactions involving defendant. Taken as a whole, we find sufficient evidence from which a judge could find probable cause. *See State v. Gardner*, 741 S.W.2d 1, 7 (Mo. banc 1987); *cert. den.* 486 U.S. 1025, 108 S.Ct. 2001, 100 L.Ed.2d 232 (1988).

■ Defendant also asserts the warrant under which the complained-of exhibits were seized failed to describe them with particularity. The warrant directed the executing officers to seize certain property [1] in connection with violations of Chapter 339, RSMo., which regulates real estate brokers, Chapter 407, RSMo., the Merchandising Practice Act, Chapter 409, RSMo., the Securities Act, and Chapter 570, RSMo., which proscribes felony stealing.

It is elementary that no warrant shall issue unless it particularly describes the things to be seized. U.S. Const. amend. IV; Mo. Const. art. I, § 15. The degree of specificity, however, must vary with the circumstances. *State v. Johnson*, 677 S.W.2d 330, 331 (Mo.App.1984). One cir-

---

1. The warrant authorized seizure of the following:

(a) Deeds of Trust
(b) General Warranty Deeds
(c) Promissory Notes
(d) Listings
(e) Commission Lists
(f) Title Policies
(g) Ledgers
(h) Journals
(i) Earnest Money Receipts
(j) Buyer's Statements
(k) Contracts for Sale of Real Estate
(*l*) Seller's Statement
(m) Correspondence with buyers
(n) Correspondence with sellers

(a) cancelled checks
(b) check stubs
(c) bank statements
(d) deposit slips
of the following bank accounts of Holland Realty:
00–01–000 18961 Boatman's Bank of Jefferson County
0100018953 Boatman's Bank of Jefferson County

cumstance to consider is the complexity of the fraudulent acts. When assessing the particularity of a search warrant, there must be a practical margin of flexibility. "The underlying measure of adequacy in the description is whether given the specificity in the warrant, a violation of personal rights is likely." *State v. Johnson*, 677 S.W.2d at 331.

Defendant argues the executing officer was given unfettered discretion under the terms of the warrant because it merely listed documents generically without limitation by time, subject matter, parties, property or transaction. We do not dispute defendant's argument that the search warrant, standing alone, would appear to authorize a fishing expedition, an exploratory rummaging throughout defendant's office for any evidence of any offense. However, under the circumstances of this case, the warrant does not stand alone and its validity need not be determined in a vacuum. It has been held that sufficient particularity to validate a warrant inadquately limited upon its face may be supplied by the attachment or incorporation by reference of the application for the warrant and the supporting affidavits. *Rickert v. Sweeney*, 813 F.2d 907, 909 (8th Cir.1987); *United States v. Roche*, 614 F.2d 6, 8 (1st Cir. 1980). Presence of these documents at the search, even though not physically attached to the warrant, has been held to provide sufficient particularity. *Rickert, supra; United States v. Wuagneux*, 683 F.2d 1343, 1351 n. 6 (11th Cir.1982). In holding that reference to a specific transaction sufficed to provide particularity to a warrant authorizing a search and seizure of a generalized list of documents, the Supreme Court of the United States recognized that the investigation of complex schemes to defraud necessarily entails the piecing together, like a jigsaw puzzle, of many pieces of paper, innocuous when taken singly, revealing the total picture only when completed. *Andresen v. Maryland*, 427 U.S. 463, 480 n. 10, 96 S.Ct. 2737,

2748–49, n. 10, 49 L.Ed.2d 627, 642–43 n. 10 (1976). "The complexity of an illegal scheme may not be used as a shield to avoid detection when the State has demonstrated probable cause to believe that a crime has been committed and probable cause to believe that evidence of this crime is in the suspect's possession." *Id.*

We are not referred to nor has our research disclosed any Missouri case which has addressed the supplying of particularity to a generalized search warrant by reference to the application and the supporting affidavits upon which the warrant was issued. Nevertheless, we are persuaded by the reasoning and logic of such federal decisions as those cited above that application of such a rule under the facts shown by the evidence in this case poses no danger of a 4th Amendment violation. The purpose of a requirement that a warrant "particularly describ[e] the place to be searched, and the person or things to be seized" is to prevent "general, exploratory rummaging in a persons belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564, 583 (1971). This requirement is met when the description in the warrant or affidavits enables the searcher to reasonably ascertain and identify the things authorized to be seized. *Wuagneux*, 683 F.2d at 1348; § 542.276.6(4) RSMo.1986. We also note the directive to a judge to whom an application for a search warrant is presented to consider supporting affidavits "in filling out any deficiencies in the description of the person, place or thing to be searched, or of the property, article, material, substance or person to be seized." § 542.276.3 RSMo.1986.

The evidence in this case discloses that the warrant here was executed after a lengthy audit of defendant's records by investigators from the Attorney General's Office. At the hearing on the motion to suppress evidence, the police officer who was responsible for executing the search

warrant, Lieutenant Meinberg, testified that he specifically requested assistance from Investigators Waddell and Shipley, as he was unfamiliar with the types of documents listed on the warrant. Investigators Shipley and Waddell testified that in searching the premises they would identify desired papers, and then handed them to Lieutenant Meinberg who listed them. Investigator Wadell testified that she conducted an audit of defendant in the course of her employment, and was familiar with defendant's files. Lieutenant Meinberg testified the search warrant *and* the application, which limited the documents to those pertaining to specific transactions, and which incorporated the affidavits, were on the premises during the search. He also testified defendant was given a copy of the property receipt and the warrant.

Under these facts, we conclude defendant did not meet his burden of establishing that his rights were violated. *State v. Clark,* 729 S.W.2d 579, 583 (Mo.App.1987); *State v. Eidson,* 701 S.W.2d 549, 553 (Mo.App.1985). While there is nothing in the testimony to indicate the application and affidavits were physically attached to the warrant, they were present and the testimony demonstrated the searching officers knew what they were looking for. Had defendant asked to see the warrant, presumably he would have been shown both the warrant and the affidavit. Any error that might be read into the imperfections of this warrant cannot be prejudicial when considered in conjunction with the independent evidence of guilt in this case, particularly the copious testimony of the victims and the defendant himself, and the evidence and testimony concerning defendant's banking transactions. *See State v. Pennington,* 642 S.W.2d at 648.

Defendant also claims items were improperly taken because they were not listed in the warrant, affidavits, or the application, and concludes from that that the search was a general "fishing expedition." We disagree. The evidence was seized under the plain view doctrine, an exception to the warrant requirement that applies when: (1) the evidence is observed in plain view while the officer is in a place where he has a right to be; (2) the discovery of the evidence is inadvertent; and (3) it is apparent to the police that they have evidence before them. *State v. Schneider,* 736 S.W.2d 392, 399 (Mo. banc 1987), *cert. den.* 484 U.S. 1047, 108 S.Ct. 786, 98 L.Ed.2d 871 (1988). The officers were lawfully on the premises with a search warrant. The items were in their plain view as they had a right to be looking in the files. *See State v. Abbott,* 664 S.W.2d 537, 542 (Mo.App.1983). Lieutenant Meinberg testified without objection that while Investigator Waddell was searching the files she ran across some of the names in the complaints about defendant, and had suspicions concerning those files. We find this evidence falls within the plain view exception.

While we find no constitutional violations on the facts presented, we caution law enforcement officers preparing warrants in the future not to prepare them cavalierly assuming that if there is a problem the warrant will fall into some exception from the warrant requirement or will squeak by constitutional analysis.

The judgment is affirmed.

HAMILTON and GRIMM, JJ., concur.