**STATE of Missouri, Respondent,**

v.

**David Michael LUSK, Appellant.**

No. 54382.

Supreme Court of Missouri,
Division No. 2.

April 13, 1970.

John C. Danforth, Atty. Gen., Charles A. Blackmar, Asst. Atty. Gen., Jefferson City, for respondent.

Henry G. Morris, St. Louis, for appellant.

STOCKARD, Commissioner.

David Michael Lusk (hereafter referred to as defendant) and Duane Swiggart were jointly charged by indictment with first degree murder in the death of George Hassen. Defendant requested and obtained a severance. He was found guilty by a jury of first degree murder, and the jury assessed the punishment at death. Thereafter, pursuant to Supreme Court Rule 27.04, V.A.M.R., the trial court reduced the punishment to life imprisonment, defendant's motion for new trial was overruled, allocution was held and judgment entered. Defendant has now appealed to this court.

From the evidence offered by the State (defendant offered none) including defendant's confession, the jury reasonably could have found the occurrence of the following events. When Edna Thomas reported for work at Audie's Loop Bar as barmaid on the evening of February 28, 1968, Mr. Hassen, a brewery worker who was on vacation, was in his "regular place," sitting at the bar asleep. During the evening defendant and Duane Swiggart were in the Bar. Shortly before 1:30 o'clock the next morning when Miss Thomas was preparing to close she asked defendant to help Mr. Hassen to his automobile which was parked at the tavern. Defendant led him outside and Duane Swiggart said, "Let's take him out and roll him." Defendant and Swiggart then drove to a cornfield in St. Louis County. Mr. Hassen was highly intoxicated and appeared to be asleep. Swiggart dragged Mr. Hassen

from the automobile and started hitting and kicking him. Defendant also "punched" him while Swiggart held him up. Defendant removed Mr. Hassen's wallet and some change from his pocket, and Swiggart removed a ring. They then dragged Mr. Hassen out into the field about a hundred feet and left him there. Defendant and Swiggart found some credit cards issued to George Hassen in the wallet, and later that day they went to a Central Hardware Store and purchased a 20-gauge shotgun using a credit card containing the name of George Hassen. They then went to a second Central Hardware Store and attempted to purchase another shotgun, but because the clerk became suspicious and summoned the credit manager they left the store, leaving the credit card bearing the name of George Hassen in the possession of the clerk. A day or so later, the shotgun which was obtained from Central Hardware, and the ring which had been taken from Mr. Hassen, were sold by defendant to Robert McGuire for $50.00.

On the morning of March 2, Mr. Edward Shelton entered the field when he thought he saw something there, and found the body of George Hassen. The lower portion of the body was unclothed. The corn in the field had been harvested and the area around the body showed evidence of having been trampled down. A photograph, taken of the body while still in the field, indicates that the area around the nose and mouth was bloody. A pathologist testified that when he examined the body there was a brown discolored area on the right cheek, the nature of which he could not determine. There was also a bruised area on the left forearm which "looked like an old injury, looked like it might have been a burn." There were also vertical scratch marks over the buttocks and lower part of the back. There was a small hemorrhage, about an inch, into some muscle in the front portion of the chest which could not be seen externally and which probably had occurred prior to death. A test revealed that the blood alcohol content was ".39 grams percent," which is "markedly elevated" and

indicated that at the time of death, which occurred "at least 24 hours" before the body was found, he was "considerably intoxicated." The pathologist also testified that the autopsy of deceased had disclosed that he had an "old heart disease" and "some pulmonary disease," but that there was no evidence that anything acute had happened pertaining to them. He also stated that in view of the known alcohol level and the known temperature of the area, which was "almost at freezing point" and "did dip below freezing point on the night before he was found," it was his opinion that "exposure was a strong factor and probably entered very highly into the death," and that it "contributed to" and "hastened" the death.

Defendant first contends that there was insufficient proof of the corpus delicti, and for that reason no submissible case was made, at least without reference to his confession.

 In homicide, the corpus delicti consists of two elements: (1) the death of the person alleged to have been killed, and (2) the criminal agency of someone other than the deceased caused the death. State v. O'Neal, Mo., 436 S.W.2d 241; State v. Meadows, 330 Mo. 1020, 51 S.W.2d 1033; State v. Hubbard, 351 Mo. 143, 171 S.W. 2d 701. In this case the death of George Hassen is admitted, and it was proved without reference to or reliance on the confession of defendant. With respect to the causation, the evidence other than the confessions of defendant shows that George Hassen was alive, but intoxicated to the extent of being unable to take care of himself, when he was led from Audie's Loop Bar by defendant early in the morning of February 29. He did not go home, but on March 2 he was found dead in a cornfield a few miles distant under circumstances which indicated that he had been robbed, that his presence in the field was the result of acts of someone other than the deceased, and that exposure had contributed to or resulted in his death. Particularly applicable to this case is the state-

ment in State v. Francies, Mo., 295 S.W.2d 8, where in referring to the facts of that case other than was shown by defendant's confession, it was said: "the fact that the dead body of the deceased was found on a used car lot in a large city, in a nude condition, and that her clothes were found in an ashpit a block away, when considered in connection with the finding of the pathologist that she died of suffocation, would seem to be sufficient to indicate that her death resulted from the criminal agency of someone." See also State v. McQuinn, 361 Mo. 631, 235 S.W.2d 396; and State v. Skibiski, 245 Mo. 459, 150 S.W. 1038. We conclude that the corpus delicti was sufficiently established.

Defendant challenges the verdict directing instruction which submitted murder in the first degree on the grounds that it was "broader than the charge laid in the indictment" and it was not supported by the evidence.

The indictment charged that defendant and Duane Swiggart "did make an assault upon one George Hassen, * * * with their fists and feet, and then and there * * * did strike, knock, kick, hit and beat with great force and violence at and upon the body of the said George Hassen thereby feloniously inflicting mortal wounds, from which said mortal wounds George Hassen did die * * *."

Instruction No. 1, in its material parts, was as follows:

"* * * the court instructs the jury that if you find and believe * * * that the defendant * * * did make an assault upon one George Hassen with his fists and feet, as mentioned in the evidence, and if you further find and believe * * * that the defendant * * did * * * strike, knock, kick, hit and beat, with great force and violence against and upon the body of the said George Hassen, and thereafter leave the said George Hassen exposed to the elements, * * * and if you further find and believe * * * that * * * the

said assault upon the body of the said George Hassen or the subsequent exposure to which his body was subjected or both such assault and exposure, contributed mediately or immediately to the death of the said George Hassen * * * then you will find the defendant guilty of murder in the first degree as charged in the indictment * * *."

We first note that by the indictment defendant was charged with having inflicted mortal wounds on George Hassen by means of an assault with fists and feet in that he struck, knocked, kicked, hit and beat him. The indictment did not charge that defendant caused or contributed to the death of George Hassen by causing him to be exposed to the elements, but this latter means of bringing about the death of George Hassen was submitted in Instruction No. 1 in the disjunctive as a contributing cause of death. In addition, Instruction No. 1 submitted in the disjunctive that the jury could find defendant guilty of murder in the first degree if it found that "the said assault upon the body" of George Hassen "contributed * * * to the death." The evidence authorizes a finding that at the time defendant and Swiggart dragged Hassen from the automobile before they took him into the cornfield and abandoned him to the elements in his highly intoxicated condition, they hit, kicked and "punched" him. However, there is no evidence that by these acts any particular physical injury was inflicted on Hassen except as may be inferred by the fact that the photograph showed some blood around the nose and mouth, and as may be found in the testimony of the pathologist. There was no expert or other testimony that any or a combination of these conditions could have contributed to or caused Hassen's death.

Two questions emerge. First, in the absence of expert testimony was there sufficient evidence to support a submission and to enable a jury of laymen to find defendant guilty of murder based upon the evidence in this record as to the nature, character and result of the physical assault

upon George Hassen. The general rule, as set forth in State v. Minton, 234 N.C. 716, 68 S.E.2d 844, 31 A.L.R.2d 682, is as follows: "The cause of death may be established in a prosecution for unlawful homicide without the use of expert medical testimony where the facts in evidence are such that every person of average intelligence would know from his own experience or knowledge that the wound was mortal in character. * * * There is no proper foundation, however, for a finding by the jury as to the cause of death without expert medical testimony where the cause of death is obscure and an average layman could have no well grounded opinion as to the cause." See also the cases cited in the annotation at 31 A.L.R.2d 693. An example of the application of each of these rules will suffice. In State v. Minton, supra, the evidence showed that the deceased was found dead shortly after being shot in the chest just above the heart. This evidence was held to authorize the jury to find that the proximate cause of the death was the shooting. In State v. Rounds, 104 Vt. 442, 160 A. 249, the defendant inflicted three blows on the face and head of deceased with no evidence of other injuries to his body, and the deceased later died after a period of unconsciousness and after falling from bed and fracturing three ribs, one of which had punctured the plural cavity. This evidence was held to be insufficient to show that the blows inflicted by defendant caused the death.

■ In this case the evidence of the presence of blood in the area of the nose and mouth, as shown by the photograph, and the testimony of the discolored cheek, the bruise or burn on the forearm, the scratch marks, and the slight chest hemorrhage do not present physical manifestations of such nature, character and seriousness that every person of average intelligence would know from his own experience and knowledge that they evidence a mortal wounding, or a wounding that contributed to death. The average lay juror could not form a well grounded opinion of causation

from these facts. The disjunctive submission of "said assault" as a contributing cause of the death was not supported by the evidence.

■ Second, in view of the fact that the other disjunctive submission (exposure to the elements) was adequately demonstrated to have been a factor contributing to the death, may the conviction be sustained on this ground? The answer must be that it cannot for two reasons. "It has long been the rule that when a crime may be committed by any of several methods, the information [or indictment] must charge one or more of the methods, and the method or methods submitted in the verdict directing instruction must be among those alleged in the information, and when submitted in the disjunctive each must be supported by evidence." State v. Shepard, Mo., 442 S.W.2d 58, 60. In this case the instruction submitted in the disjunctive a method by which the murder could have been committed, that is, the exposure, which was not alleged in the indictment. See the general rule in 23A C.J.S. Criminal Law § 1311. In addition, the instruction submitted in the disjunctive a method by which the murder could have been committed which was not supported by any substantial evidence as to causation. In State v. Rizor, 353 Mo. 368, 182 S.W.2d 525, 528, in commenting on the instruction in that homicide case, the court said: "The instruction did authorize a conviction on proof beyond a reasonable doubt of a fatal wounding of deceased by appellant 'with his fists and hands or a certain blunt instrument.' We agree with appellant's thesis. It permitted a conviction on proof of a killing with appellant's fists and hands alone, or with a blunt instrument alone. And if there were no proof of the latter, a conviction on that ground would be unsupported by substantial evidence."

We conclude that under the circumstances of this case, Instruction No. 1 was erroneous. Although not necessary to the determination of this appeal a question of the admissibility of certain evidence has

been raised by defendant which undoubtedly will recur on retrial, and which should be settled now. See State v. Kinne, Mo., 372 S.W.2d 62.

The State offered in evidence an oral confession made by defendant. This was testified to by a police officer to whom the confession was made. Before the testimony was offered a hearing was held out of the presence of the jury. The court made a ruling not clearly within the requirements of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R. 3d 1205, and Sims v. State of Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593. However, subsequently the court did make such a finding, and upon a retrial, if the voluntariness is again challenged, the trial court can and should comply with the procedural requirements of the above two cases. In addition, defendant made a confession which was taken on video tape, and which was shown to the jury as a part of the State's case. We assume voluntariness of that confession because if challenged on retrial for that reason the trial court can determine that issue. However, in his brief defendant asserts that the showing of the confession by use of video tape "denied to him his constitutional privilege under the Fifth Amendment of the Constitution of the United States and compelled him to be a witness against himself by appearing in person before the jury on the State's side of the case." This contention is not developed in the argument and no case or other authority is cited in support of it.

This court has permitted the use in evidence of a taped recording of a confession after proper foundation. See State v. Perkins, 355 Mo. 851, 198 S.W.2d 704, 168 A.L.R. 920, and the exhaustive study of the issue of admissibility. It has also permitted the showing of moving pictures to the jury when properly identified and when material to an issue. Wren v. St. Louis Public Service Co., Mo., 333 S.W.2d 92; Morris v. E. I. Du Pont De Nemours & Co., 346 Mo. 126, 139 S.W.2d 984, 129

A.L.R. 352. The use of a video tape is a combination of the two, and stands on the same footing as a sound motion picture. In People v. Hayes, 21 Cal.App.2d 320, 71 P.2d 321, a sound motion picture of the defendant making a confession to the police was shown to the jury over the objection of the defendant. In upholding the conviction the court expressly ruled adversely to defendant's constitutional contentions, and said that such reproduction "stands on the same basis as the presentation in court of a confession through any orthodox mechanical medium, that is, there is a preliminary question to be determined by the trial judge as to whether or not the sound moving picture is an accurate reproduction of that which it is alleged occurred. If after a preliminary examination, the trial judge is satisfied that the sound moving picture reproduces accurately that which has been said and done, and the other requirements relative to the admissibility of a confession are present, i. e., it was freely and voluntarily made without hope of immunity or promise of reward, then, not only should the preliminary foundation and the sound moving picture go to the jury, but, in keeping with the policy of the courts to avail themselves of each and every aid of science for the purpose of ascertaining the truth, such practice is to be commended as of inestimable value to triers of fact in reaching accurate conclusions." In the Hayes case the court commented that the objection is frequently made in criminal trials that a defendant's confession has not been freely and voluntarily made, but when a confession is presented by means of a "movietone" the trial court is enabled to determine more accurately the truth or falsity of such claims and rule accordingly. See also Commonwealth v. Roller, 100 Pa. Super. 125, where a "talking motion picture" of defendant making a confession was held to be admissible in evidence.

■ The presentation to a jury of a properly authenticated video tape of a confession of a defendant, after the issue of voluntariness has been determined by the

trial court, does not infringe any constitutional right asserted by defendant.

Other matters presented in defendant's brief need not be ruled at this time. Upon retrial the parties will have the benefit of the contentions and may act accordingly.

The judgment is reversed and the cause remanded.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

DONNELLY, P. J., MORGAN, J., and YEAMAN, Special Judge, concur.

FINCH, J., not sitting.