**STATE of Missouri, Respondent,**

v.

**Gregory DAHMER, Appellant.**

**No. WD 38830.**

Missouri Court of Appeals,
Western District.

Nov. 17, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 29, 1987.

Application to Transfer Denied
Feb. 17, 1988.

James W. Fletcher, Kansas City, for appellant.

William L. Webster, Atty. Gen., Jeffrey Philip Dix, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P.J., and BERREY and GAITAN, JJ.

GAITAN, Judge.

Greg Dahmer appeals a jury conviction of defrauding a secured creditor in violation of § 570.180, RSMo 1978. The punishment imposed was a fine of $20,000. Dahmer, among other challenges to the judgment, asserts that the trial court erred in giving Instruction No. 5, the verdict di-

rector, in the disjunctive form "removed, concealed or transferred property subject to a security interest" because each alternative was not supported by the evidence. That assertion is dispositive of the case and on that basis we reverse the judgment and remand the case for a new trial.

From 1976 to 1984, Dahmer operated a cattle business in Vernon County. He would buy light weight heifers, increase their weight and then resell them. Dahmer financed these cattle purchases by obtaining secured loans from Thornton Bank in Nevada (hereinafter the bank).

When Dahmer wanted to make a purchase of cattle, he would contact the bank. The bank would grant him an oral line of credit. Dahmer would then make the cattle purchase up to his line of credit. After the cattle were purchased, Dahmer would present the sales slip for the cattle to the bank to verify the purchase. At the same time, he would sign a promissory note for the loan as well as a security agreement granting a security interest in the cattle he had just purchased to the bank as collateral for the loan. At any given time, Dahmer had several such notes and security agreements outstanding.

When the cattle were ready for resale, Dahmer would sell them on the open market. Under the arrangement Dahmer had with the bank, Dahmer was authorized to sell the cattle at his discretion. After the cattle were sold, Dahmer would deposit the proceeds in his bank account. The proceeds would then be applied to one or more outstanding notes Dahmer had with the bank.

Periodically, the bank would make inspections of the farm where Dahmer kept his cattle to verify the number of cattle pledged as collateral. On April 11, 1984, an inspection was conducted during which 339 head of cattle were counted. At the time of this inspection, Dahmer had four outstanding promissory notes with the bank, secured by a combined total of 375 head of cattle.[1]

---

1. The first note, dated June 20, 1983, was in the amount of $39,355 and was secured by 127 head

of cattle. The second note, dated July 27, 1983, was in the amount of $22,797 and was secured

On June 26, 1984, three transactions took place between Dahmer and the bank. First, Dahmer sold 75 head of cattle. The proceeds from that sale were applied to the second of the four notes. Second, Dahmer obtained a new loan in the amount of $18,-854.58 which was secured by 83 head of cattle which he had just purchased. Third, the four outstanding notes were renewed and combined with the new loan into one note in the amount of $101,162.36. This figure represented the amounts owed on the previous four notes plus the new loan.[2] The new note was secured by a total of 347 head of cattle. The bank computed the 347 total by adding the 83 head purchased to the 339 head counted during the bank's inspection on April 11, 1984, and subtracting the 75 head sold.

On July 18th or 19th, 1984, the bank conducted an inspection to verify the number of cattle pledged as collateral for the June 26, 1984 note. At this time, approximately 85 head of cattle were counted. Another inspection was made during the last week in July, 1984. No cattle were found. Dahmer was not present nor was anyone employed by him or acting as his agent present during either of the July inspections.

Sometime during the early part of August, the bank located Dahmer and 77 head of cattle on a farm west of Fort Scott, Kansas. When asked to account for the other 270 head of cattle pledged as collateral for the June 26, 1984 note, Dahmer informed the bank that they had been sold.

Several weeks later, in October of 1984, the bank seized the 77 head of cattle found in Fort Scott and delivered them to a Fort Scott sale barn where they were sold. The proceeds from that sale were applied to the June 26, 1984 note. An unpaid balance of $87,109.40 remained on the note. Thereafter, a representative of the bank went to

the prosecuting attorney with a complaint and the charge in question was filed.

Instruction No. 5, the verdict directing instruction submitted to the jury, reads in pertinent part as follows:

### INSTRUCTION # 5

If you find and believe from the evidence beyond a reasonable doubt:

First, that between April 11, 1984, and July 26, 1984, in the County of Vernon, State of Missouri, the defendant removed, concealed or transferred property subject to a security interest, to-wit: cattle, and

Second, that the defendant so acted with the purpose to defraud, and

Third, that the amount remaining to be paid on the secured debt, including interest, was at least five hundred dollars, then you will find the defendant guilty of defrauding a secured creditor.

Dahmer contends it was error for the trial court to give this instruction in the disjunctive form "removed, concealed or transferred property subject to a security interest" because each alternative was not supported by the evidence. We agree.

■ Instruction No. 5 precisely tracks MAI–CR 2d 24.60. Recognizing that the crime of defrauding a secured creditor can be committed by one or more acts, 24.60 provides for alternative means which may be omitted from or included in the instruction depending on the facts of the particular case. Where, however, more than one alternative is submitted in the disjunctive, each alternative must be supported by the evidence. *State v. Brigham*, 709 S.W.2d 917, 922 (Mo.App.1986). The question is whether or not the disjunctive submission of "transferred property subject to a security interest" was proper in this case.

by 46 head of cattle. The third note, dated October 31, 1983, was in the amount of $26,165 and was secured by 127 head of cattle. The fourth note, dated February 6, 1984, was in the amount of $19,000 and was secured by 75 head of cattle.

**2.** As of June 26, 1984, the balances due on the four previous notes and the new loan were as follows:

| | |
|---|---|
| Note of June 20, 1983 = | $ 33,517.78 |
| Note of July 27, 1983 = | $ 3,625.00 |
| Note of October 31, 1983 = | $ 26,165.00 |
| Note of February 6, 1984 = | $ 19,000.00 |
| New loan of June 26, 1984 = | $ 18,854.58. |
| Total | $101,162.36 |

The evidence established that for several years the bank had permitted Dahmer to sell cattle pledged as collateral at his discretion with the understanding that the proceeds would be applied to the underlying debt. By this course of dealing, the bank gave its implied consent to the sale of the cattle securing the June 26, 1984 note. *See Pieper v. First National Bank of Linn Creek*, 453 S.W.2d 926, 931 (Mo.1970); *Moffett Bros. & Andrews Commission Co. v. Kent*, 5 S.W.2d 395, 400 (Mo.1928); *CharterBank Butler v. Central Cooperatives*, 667 S.W.2d 463, 465 (Mo.App.1984). Moreover, the security agreement given in conjunction with the June 26, 1984 note expressly authorizes "sales from time to time in the ordinary course of Debtor's business of those items of the Collateral which are part of the business inventory of Debtor."

The Uniform Commercial Code, as adopted by Missouri, provides that "[a] security interest continues in collateral notwithstanding sale ... by the debtor unless his action was authorized by the secured party in the security agreement or otherwise ..." Section 400.9–306(2), RSMo 1978. *See also CharterBank Butler v. Central Cooperatives, supra*, 667 S.W.2d at 465. Here, the sale of the 270 cattle was clearly authorized by the bank. This authorization, express and implied, cut off the bank's security interest in the collateral at the time of sale, notwithstanding their attempt to condition consent upon receipt of the proceeds. *Pieper v. First National Bank of Linn Creek, supra*, 453 S.W.2d at 931. Dahmer's failure to apply the sale proceeds to the secured debt does not affect our finding that the sale was authorized within the meaning of § 400.9–306(2). The bank waived its security interest in the collateral as a matter of law.

At the time Dahmer sold the 270 cattle, they were no longer subject to a security interest. Accordingly, a jury could not, as a matter of law, find that Dahmer "transferred property subject to a security interest." The disjunctive submission of that alternative in Instruction No. 5 was erroneous.

We have reviewed Dahmer's other contentions of error and find either that they are unlikely to arise on retrial or that no error was committed.

The judgment is reversed and the case remanded for a new trial.