**STATE of Missouri, Respondent,**

v.

**Jeff DAVISON, Appellant.**

**No. WD 58231.**

Missouri Court of Appeals,
Western District.

April 10, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 29, 2001.

Application for Transfer Denied
June 26, 2001.

Kent Denzel, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Susan K. Glass, Asst. Atty. Gen., Jefferson City, for respondent.

Before Presiding Judge LAURA DENVIR STITH, Judge SMART and Judge HOWARD.

LAURA DENVIR STITH, Presiding Judge.

Defendant–Appellant Jeff Davison appeals the circuit court's judgment convicting him of seven counts of receiving stolen property in violation of Section 570.080 RSMo 1994[1]. Mr. Davison raises four points on appeal. In Point I, he claims that the trial court erred in instructing the jury that it should convict him if it determined that he either "retained or disposed of" the property in question, in that there

was no evidence to support the alternative submission that he had "disposed of" any of the property. We conclude that the court below erred in instructing the jury in the disjunctive—i.e., that Mr. Davison should be found guilty if it found that he either "retained or disposed of" the stolen property—in that the evidence was insufficient to support a jury conclusion that Mr. Davison had "disposed of" any property, and that this error resulted in prejudice to Mr. Davison. We therefore reverse and remand for a new trial on this basis. Because, however, Mr. Davison's other contentions may arise again on remand, we address them as well.

Mr. Davison argues in Point II that the trial court violated his right to be free from double jeopardy when it sentenced him for multiple counts of receiving stolen property, because the State's evidence proved no more than a single act of "retaining" stolen property. We agree, holding that although the State's evidence was sufficient to prove that the seven pieces of property retained by Mr. Davison on a single occasion were stolen from different owners at different times, it was not sufficient under Section 570.080 to show that he received the property at different times or to show seven separate acts of retention.

Mr. Davison claims in Point III that the trial court erred in overruling his motion for judgment of acquittal at the close of the evidence as to Counts 2A, 5, 6 and 7, because the evidence was insufficient to support his conviction on those counts. We agree with Mr. Davison that the evidence was insufficient to support his conviction on Count 2A, because the State adduced no evidence from which a juror could reasonably have concluded that the toolbox that was the subject of Count 2A

---

1. All statutory references are to RSMo 1994 unless otherwise stated.

was the toolbox that was, in fact, recovered from the storage unit rented by Mr. Davison. As to Counts 5, 6 and 7, however, we disagree that the "doctrine of destructive contradictions" renders insufficient the evidence underlying Mr. Davison's convictions on those counts.

Mr. Davison claims that the trial court erred in ruling that he had no standing to challenge the admission of evidence seized from his rented storage units and from his grandmother's home. Because, however, Mr. Davison can on remand admit an interest in the storage locker for the limited purposes of his motion to suppress, we do not reach the issue of standing here. Mr. Davison further challenges the sufficiency of the affidavit supplied by Sheriff's deputies to secure the search warrant, claiming that it did not state adequate facts to demonstrate probable cause. For the reasons discussed herein, we disagree.

Reversed and remanded.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Considered in the light most favorable to the verdict below, the evidence at Mr. Davison's trial was as follows:

On November 1, 1998, Mr. Davison paid cash for a six-month rental of unit 18 of a storage lot owned by Dale Wray, ostensibly to store a bass boat owned by him and a Mr. Dennis Schmidt. A few days later, Mr. Davison returned to the storage lot and asked Mr. Wray to change the name on the lease of unit 18 to that of Dennis Schmidt, so that Mr. Schmidt could be reimbursed in part by his bass club for the storage of his boat. Mr. Wray agreed to tear up the original contract signed by Mr. Davison and to execute a new lease. The lease was executed in the name of Dennis Schmidt, and Mr. Davison signed Mr. Schmidt's name on the contract. Mr. Wray testified at trial that he never met Dennis Schmidt. Mr. Schmidt also testified that he had never been to Nodaway County and had never asked Mr. Davison to rent a storage unit for him. Later in the month of November, Mr. Davison returned to the lot, and rented unit 16 in his own name.

On March 10, 1999, Nodaway County Sheriff's deputies contacted Mr. Wray, and inquired as to whether Mr. Davison was currently leasing any of Mr. Wray's storage facilities. Subsequently, on March 11, 1999, Mr. Wray checked the storage lot to see whether there was space available for a potential customer. While doing so, he drove past unit 18. He saw that the storage unit door was slightly ajar and that Mr. Davison was outside the unit. Mr. Wray could see a "four-wheeler" inside the unit. Mr. Davison shut the storage unit door upon noticing Mr. Wray's presence. Mr. Wray then called the Nodaway County Sheriff's Department and informed Deputy Steve Whittington that he had seen a four-wheeler in the interior of storage unit 18, and that Mr. Davison had shut the storage unit door upon noticing his presence.

The Sheriff's Department (the Department) had already been investigating the theft of many tools, parts, and tool boxes from a Kawasaki plant in nearby Maryville, Missouri. The Department's investigations of these thefts revealed that Mr. Davison worked at this plant as a forklift driver, that Mr. Davison had several prior convictions for stealing, and that Mr. Davison had rented two storage units from Wray's storage—one in his own name and one in the name of Dennis Schmidt. The police also discovered that two "four-wheelers" had been stolen from Flenties, a nearby farm equipment dealership. Using the information obtained from Mr. Wray and facts uncovered during the police investigation, Deputy Whittington secured a warrant to search storage units 16 and 18

in Mr. Wray's storage lot. The affidavit used by Deputy Whittington to secure the warrant did not expressly name Mr. Wray, stating only that a confidential informant had seen the four-wheeler in unit 18.

On March 12, 1999, Deputy Whittington and other law-enforcement officers executed the warrant to search storage units 16 and 18, and they questioned and arrested Mr. Davison. He admitted that he had rented storage unit 16 but disavowed any interest in unit 18, which the lease showed was rented by Dennis Schmidt. Deputy Randy Houston accompanied Mr. Davison to his grandmother's home at 618 S. Mulberry Street in Maryville to retrieve a key to the padlock on storage unit 16. The deputies had to use bolt-cutters to cut the padlock on storage unit 18.

According to the deputies, when they searched unit 18, they found two Kawasaki "all terrain vehicles" (ATV's or four-wheelers), a Polaris ATV, a Craftsman roll-away tool chest with tools, a John Deere riding lawnmower, and assorted tools and parts from the Kawasaki plant. Photographs taken at the time of the search, depicting storage unit 18 and its contents as they appeared later on the day that Deputy Whittington gained entry, show a single ATV in unit 18. Other photographs taken at the time depict other allegedly stolen items, including another ATV, the tool boxes and the lawn mowers, sitting on a flatbed truck outside the storage locker. In unit 16, the deputies found and seized an open package of padlocks. The deputies then obtained a warrant to search the residence at 618 S. Mulberry Street for keys matching the padlocks in storage unit 16.

Mr. Davison was charged as a prior and persistent offender with three counts of stealing in violation of Section 570.030

RSMo Cum.Supp.1998, and, in the alternative, with seven counts of receiving stolen property in violation of Section 570.080 RSMo 1994 [2]. Before trial, Mr. Davison moved to suppress the evidence seized from the storage units. The State argued that Mr. Davison had no standing to challenge the search with respect to storage unit 18, as he had disclaimed any interest in storage unit 18 to Sheriff's deputies, thereby surrendering any expectation of privacy in that unit. Mr. Davison responded that the State's affidavit used to secure the warrant showed that Mr. Davison had rented the unit and thus that he had a possessory interest, and that the State should therefore be estopped from arguing that Mr. Davison lacked standing. Mr. Davison also argued that the court had not received any evidence that Mr. Davison denied an interest in unit 18, and the mere allegations to this effect by the State in its responsive motion to his Motion to Suppress Evidence did not provide a basis for so ruling. The court nonetheless agreed with the State and overruled Mr. Davison's motion to suppress evidence.

At Mr. Davison's trial, several individuals testified concerning property that had been stolen from them. Shawn Leeper testified that on Monday, March 8, 1999, he discovered that his toolbox and tools were missing from the Kawasaki plant at which he worked in Maryville, Missouri. He testified that one of the items seized from storage unit 18 was in fact his missing toolbox. He valued the toolbox and tools at around $3,000.00.

Another Kawasaki employee, David Thurnau, also testified that he discovered that his toolbox was missing on March 8, 1999. Mr. Thurnau's property was depicted in exhibits 2A through 2M at trial. There was no testimony from either officer

2. All statutory references are to RSMo 1994, unless otherwise indicated.

who testified at trial, however, as to when or where the items in Exhibits 2A through 2M were recovered. Other Kawasaki employees also testified that there were many tools and spare parts stolen from the plant, totaling almost $17,000 in value. Those items were the subject of Count 3 of the charges against Mr. Davison and were among the items recovered from the storage lockers belonging to Mr. Davison.

Mr. Allen Scott, the manager of Flenties, a farm equipment dealer, testified at trial that two Kawasaki four-wheelers were stolen from Flenties in late September, 1998. Deputy Whittington testified that these two four-wheelers were found in storage unit 18.

Various other owners of property seized from unit 18 were called. Mr. Charles Campbell testified that his John Deere riding lawnmower was stolen from him, and Deputy Whittington testified that the mower was seized from unit 18. Mr. Steve Campbell testified that his Polaris four wheeler was stolen from his workshop in early November, 1998. He testified further that he saw Mr. Davison working on his neighbor's fence in late October, 1998, in a position where Mr. Davison had a view of Mr. Campbell's workshop. He also testified that he recovered the four wheeler from amongst the items seized by police from Mr. Davison's storage lockers.

At the close of all evidence and arguments, the case went to the jury. Mr. Davison objected to the jury instructions concerning the seven separate charges of receiving stolen property because the instructions submitted disjunctive theories of guilt—that Mr. Davison had committed the crime of receiving stolen property by either "retaining *or* disposing of" property— yet no evidence had been adduced at trial to support a possible jury determination that he had "disposed of" the stolen property. His objection was overruled. Ulti-

mately, the jury acquitted Mr. Davison of the three counts of stealing with which he was charged, but convicted him of all seven counts of receiving stolen property by either retaining or disposing of it. On January 24, 2000, the court sentenced Mr. Davison, as a prior and persistent offender, to seven years in prison on each of the seven counts, to be served consecutively. This appeal follows.

## II. LEGAL ANALYSIS

### A. *Submission of Jury Instructions in the Disjunctive.*

█ Mr. Davison was charged with seven separate counts of receiving stolen property in violation of Section 570.080. Each count charged that Mr. Davison had committed a separate act of receiving stolen property, stating in the alternative that he had either "retained or disposed" of the property on the dates in question.

Following the same format set forth in the information, the instructions ultimately submitted to the jury at Mr. Davison's trial on each of the seven counts required the jury to convict Mr. Davison if the jury found:

> "...that at the time defendant *retained or disposed* of this property, he knew or believed it had been stolen, and that the defendant *retained or disposed* of the property for the purpose of withholding it from the owner permanently or using or disposing of it in such a way that made recovery by the owner unlikely..."

(emphasis added). The instructions thus offered the jury, in the disjunctive, two means by which it could find that Mr. Davison had committed seven counts of receiving stolen property: either by having *retained* the property or by having *disposed of* the property.

█ Mr. Davison argues that, although there was evidence adduced at his

trial that he might have "retained" at least some of the property, there was no evidence adduced that supported the alternative theory submitted to the jury that he "disposed" of the property. As Mr. Davison correctly notes, "[a]n instruction should not be given if no evidence was presented to support it." *State v.. Brown,* 958 S.W.2d 574, 580 (Mo.App. W.D.1997). An instruction "must be supported by substantial evidence and reasonable inferences to be drawn therefrom." *State v. Daugherty,* 631 S.W.2d 637, 639 (Mo.1982). It is well-settled that, under this rule, if more than one alternative basis of guilt is submitted in the disjunctive, the evidence must support each alternative. *State v. Brigham,* 709 S.W.2d 917, 922 (Mo.App. S.D.1986). Mr. Davison thus contends that it was error for the trial court to give the jury instructions in the disjunctive form because one of the alternative submissions—"disposed of"—was not supported by evidence.

■■■ The State concedes that there was no evidence that Mr. Davison had "disposed of" any of the property, and thus that submitting the disjunctive instructions was improper. But, the State notes, an appellate court will reverse "only if there is error in submitting an instruction *and* prejudice to the defendant." *State v. Taylor,* 944 S.W.2d 925, 936 (Mo. banc 1997) (emphasis added); Rule 28.02(f). *Accord, State v. Caldwell,* 956 S.W.2d 265, 267 (Mo. banc 1997); *State v. Hirt,* 16 S.W.3d 628, 632 (Mo.App. W.D.2000). The State argues that, here, the jury could not have been adversely influenced by the instructions, because "the evidence here showed only that the appellant had retained stolen property," and thus that "[t]here was no reasonable probability that the jury could have found the appellant guilty of disposing of stolen property." The State's argument proves too much, for, if accepted, it

would apply in every case in which one alternative of a disjunctive submission was not supported by the evidence. In effect, the State argues an absurdity: that it must support each alternative prong of a disjunctive submission unless there is no evidence to support one of the alternatives, in which case there is no harm done by submitting the alternative without evidence. To the contrary, as a close reading of relevant cases reveals, where, as here, the evidence supports only one disjunctive submission, the conviction may not be sustained and the conviction will be reversed and remanded for a new trial. *State v. Lusk,* 452 S.W.2d 219, 223 (Mo.1970); *State v. Dahmer,* 743 S.W.2d 462, 463 (Mo. App. W.D.1987); *State v. Shepard,* 442 S.W.2d 58, 60 (Mo. banc 1969).

To illustrate, in *Shepard,* the defendant was convicted of second-degree attempted burglary. The instructions allowed the jury to find guilt under alternative theories of the essential element of intent by requiring that the jury convict if it found that the defendant engaged in the prohibited conduct with either an "intent to commit 'some felony'" within the dwelling, or with an intent to commit "any stealing therein." *Shepard,* 442 S.W.2d at 59. Although there was evidence adduced during trial from which the jury could infer an intent to steal, no evidence supported the alternate theory that the defendant had an intent to commit "some felony" other than to steal. *Id.* at 60. The appellate court summarily deemed the instruction "confusing, erroneous and *prejudicial,*" for this reason. *Id.* (emphasis added).

Similarly, in *Lusk,* 452 S.W.2d at 219, the jury was instructed in the alternative to find against the defendant for either contributing to a person's death by an "assault upon the body," or for "thereafter leav[ing] ... [the person] exposed to the elements ... [or] both such assault and

exposure." *Id.* at 222. *Lusk* reversed because no substantial evidence supported one of the disjunctive submissions, even though the other disjunctive submission was adequately supported. *Id.* at 223. *Accord, Dahmer,* 743 S.W.2d at 463 (assertion that the evidence did not support each disjunctive submitted "was dispositive of the case," and on that basis alone court reversed the judgment and remanded the case for a new trial).

### B. Double Jeopardy Claims.

■ Mr. Davison also contends that the trial court erred in sentencing him for multiple counts of receiving stolen property, because the State's evidence proved no more than a single act of "retaining" stolen property. Mr. Davison argues that his sentences for multiple counts of receiving stolen property violated his right to be free from double jeopardy under the Constitutions of the United States and of the State of Missouri.

Mr. Davison was charged with seven separate counts of retaining or disposing of stolen property, in violation of Section 570.080. Each count alleged, with respect to separate pieces of stolen property, that:

"... during March, 1999 ... the defendant ... *retained* or *disposed of* such property, of a value of at least one hundred fifty dollars, knowing or believing that it had been stolen."

(emphasis added). Ultimately, the jury convicted Mr. Davison on all seven counts of retaining or disposing of stolen property. Mr. Davison claims that the State's failure to adduce any evidence demonstrating when and how he actually *received* the separate items of stolen property precludes his conviction on seven separate counts of retaining stolen property, as the evidence is legally sufficient to demonstrate only a single act of retention in violation of Section 570.080. We agree.

■■ The Fifth Amendment's guarantee of freedom from double jeopardy protects against multiple punishments or prosecutions for the same offense. *State v. Flenoy,* 968 S.W.2d 141, 143 (Mo. banc 1998). Accordingly, multiple convictions are only permissible under the double jeopardy clause "if the defendant has in law and in fact committed separate crimes." *Id.; Miller v. State,* 974 S.W.2d 659, 662 (Mo.App. S.D.1998).

Mr. Davison was convicted of seven separate counts of violating Section 570.080.1, which proscribes the following conduct:

A person commits the crime of receiving stolen property if for the purpose of depriving the owner of a lawful interest therein, he receives, retains or disposes of property of another knowing that it has been stolen, or believing that it has been stolen.

Sec. 570.080.1.

This statute creates the single crime of "receiving stolen property," which may be committed in different ways. *State ex rel. Westfall v. Campbell,* 637 S.W.2d 94, 97–98 (Mo.App. E.D.1982). Because Section 570.080.1 defines receiving stolen property as *"receives, retains or disposes* of property of another," the State has many options in charging and convicting a person of receiving stolen property. *State v. Hicks,* 805 S.W.2d 711, 713 (Mo.App. W.D.1991). Here, the State elected to charge Mr. Davison with violating Section 570.080 in that he either "retained or disposed of" the property of seven separate individuals.

■ Generally, in sustaining its burden of proof under Section 570.080, the State has the option of charging and proving separate and unconnected acts of *receiving* stolen property, and separate convictions for each of those proven acts will be sustained in the face of a double jeopardy challenge, even if all of the property is

afterward found in the possession of the defendant at the same time and place, if the property is shown to have been received at different times. *Gilmore v. State,* 710 S.W.2d 355, 358 (Mo.App. E.D. 1986); *State v. Gardner,* 741 S.W.2d 1, 5 (Mo. banc 1987) (defendant's conviction on 21 separate counts of receiving stolen property based on property seized at defendant's home during execution of search warrant did not violate double jeopardy clause; evidence showed that defendant received stolen goods on various separate occasions from burglar); *Miller v. State,* 974 S.W.2d 659, 661 (Mo.App. S.D.1998) (defendant's convictions on two counts of receiving stolen property affirmed, even though record established that defendant received items stolen from different stores on same day, he received them in separate installments at different times). Time is not an element of the crime, so the State need not necessarily set out the specific date of receipt of each piece of property in the information, so long as it proves separate crimes of receipt. *Gardner,* 741 S.W.2d at 6–7.

 Similarly, the State may charge separate and unconnected occasions of *retention* or *disposition* of stolen property to support separate charges of "receiving stolen property" under Section 570.080.1. *Hicks,* 805 S.W.2d at 713. It is well-settled, however, that if the State proves nothing more than a single act of receiving stolen property in one transaction, the transaction is but one crime and is not divisible into separate crimes simply because the stolen property belongs to different owners. *Gardner,* 741 S.W.2d at 5; *Gilmore,* 710 S.W.2d at 358 (fact that goods were stolen from five different owners did not support conviction of five separate counts of receiving stolen goods; de-

fendant gained constructive possession of stolen goods in a single transaction); *Cf. Green v. State,* 721 S.W.2d 197, 199 (Mo. App. S.D.1986), *overruled on other grounds, Gardner,* 741 S.W.2d at 5 (although goods had been stolen from different owners at different times, defendant received all of the stolen property at one time, and thus could be convicted of only one act of receiving stolen property).

A close reading of the record in the instant case reveals that the evidence at Mr. Davison's trial was sufficient to show that Mr. Davison *retained* all seven separate pieces of stolen property on March 12, 1999—the day that the Sheriff's Department executed a search warrant and found the property in storage lockers in the control of Mr. Davison. This proof was clearly sufficient under *Gilmore* to sustain a conviction for a single count of "receiving stolen property," in that the State showed that, in a single transaction, Mr. Davison *retained* all of the stolen property.

The evidence was also sufficient to show that the seven pieces of property were stolen from seven different owners at separate times. As noted in *Gilmore* and *Green,* however, the fact that the property found in Mr. Davison's possession belonged to seven different owners is not sufficient, in and of itself, to make his act of *retaining* the separate property on a single occasion divisible into seven different crimes. Whenever stolen, it may have been "fenced" to him on only one or more dates.

For this reason, if the State desired to prove seven separate violations of Section 570.080, it was incumbent upon the State to adduce evidence that Mr. Davison *received* the stolen property on seven separate and unconnected occasions.[3] Such

---

3. Notably, in order to prevail without error, the State would also need to have *charged* in

the information that Mr. Davison had violated Section 570.080 by "receiving" stolen proper-

proof would have supported multiple convictions of "receiving stolen property" under the reasoning of *Gardner* and *Miller.* The record reveals, however, that the State adduced no evidence in its case-in-chief sufficient to demonstrate that the seven separate pieces of property were received at different times by Mr. Davison. Indeed, there was no evidence at all in the record concerning when and how Mr. Davison received the items of stolen property. The state thus failed to sustain its burden of proving seven separate violations of Section 570.080, and Mr. Davison's seven separate convictions and sentences under this statute violate the Double Jeopardy Clause of the Constitution.

 We reject the State's argument that it was Mr. Davison's burden to present evidence at trial establishing that "he did not, in fact, receive the stolen property in question at different times or in different transactions," rather than all at once. This argument is entirely without merit. "As a matter of due process, the state must prove beyond a reasonable doubt that the defendant committed each element of the charged offense." *State v. Price,* 980 S.W.2d 143, 144 (Mo.App. E.D. 1998), citing, *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The State's argument that Mr. Davison was in any way saddled with the burden of dis-

proving his guilt for six of the seven separate offenses with which he was charged violates this principle.

We therefore remand this case for retrial in a manner not inconsistent with this opinion.[4]

### C. Sufficiency of Evidence Claims.

 In Point III, Mr. Davison claims that the trial court erred in overruling his motion for judgment of acquittal at the close of the evidence as to Counts 2A, 5, 6 and 7, because the evidence was insufficient to support his conviction on those counts. In particular, he claims that Count 2A—which alleged that he retained Mr. Thurnau's tool box was in error because the State failed to prove that the tool box was recovered from storage unit 18. With respect to Counts 5, 6 and 7, which alleged that he retained the Kawasaki ATV, John Deere Lawn Mower and the Polaris ATV in storage unit 18, Mr. Davison invokes the doctrine of "destructive contradictions."

 We review the denial of a motion for acquittal only to determine whether the State adduced "sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989); *State v.*

ty, to avoid committing a variance between the charged acts and proof at trial.

4. The State suggests that the double jeopardy issue is not apparent on the face of the record and was waived because not raised below, *see State v. Dunn,* 7 S.W.3d 427, 430 (Mo.App. W.D.1999) (noting that "a claim of double jeopardy is a personal privilege that is waived if not raised at the proper time"). On remand, however, Mr. Davison would be able to raise this claim at any new trial. Moreover, here, it was apparent from the face of the record that the seven counts failed to allege more than a single crime of retaining stolen property, and the record affirmatively shows

the failure to prove an element of six of the counts submitted. *See State v. Elliott,* 987 S.W.2d 418, 420–21 (Mo.App. W.D.1999), citing, *Hagan v. State,* 836 S.W.2d 459, 461 (Mo. banc 1992) (recognizing that, because the right to be free from double jeopardy is a constitutional right which goes "to the very power of the state to bring the defendant in the court to answer the charge brought against him," even waived claims of double jeopardy may be considered in any case in which we can determine from the face of the record that the court had no power to enter the conviction). We have therefore addressed the issue on this appeal.

*Foster,* 930 S.W.2d 62, 63 (Mo.App. E.D. 1996). We consider whether a reasonable juror could find "all of the elements of the crime" on the basis of the facts presented, "not speculation or emotion." *State v. Clay,* 975 S.W.2d 121, 139 (Mo. banc 1998); *State v. Grim,* 854 S.W.2d at 425 (Mo. banc 1993). We accept as true "all of the evidence favorable to the state, including all favorable inferences drawn from the evidence and disregard all evidence and inferences to the contrary." *Foster,* 930 S.W.2d at 64, *citing, Grim,* 854 S.W.2d at 405; *Dulany,* 781 S.W.2d at 55.

Here, Mr. Davison argues that the State failed to present any evidence that Mr. Thurnau's toolbox was the toolbox the officers found in unit 18. The only evidence the State presented was a deputy's testimony that "two Craftsman tool chests full of tools had been recovered from storage unit 18." The deputy did not specifically identify Mr. Thurnau's toolbox as one of those that was seized from unit 18, however. Therefore, Mr. Davison contends, "there was no evidence on which the jury could conclude that he received, retained, or disposed of [the toolbox]." We agree. While the State contends that a reasonable juror might have inferred that Mr. Thurnau's toolbox was, in fact, one of the toolboxes seized from storage unit 18, such an inference would be purely speculative in light of the absence of proof that this was the toolbox found in unit 18.

With respect to Counts 5, 6 and 7, Mr. Davison argues that the evidence was insufficient to establish that he had received one of the Kawasaki ATV's, the John Deere lawn mower, or the Polaris ATV, in that no credible evidence was presented to show that these items were found in storage unit 18 either.

▮▮▮▮▮▮ In this instance, we disagree with Mr. Davison. He admits that Deputy Whittington testified that he saw these items in the storage unit, but asserts that the deputy's testimony "defies logic" because the deputy gave contradictory testimony as to what he found in the storage unit, and therefore his testimony should be ignored under the "doctrine of destructive contradictions." "The doctrine of 'destructive contradictions' provides that a witness's testimony loses probative value when his or her statements at trial are so inconsistent, contradictory and diametrically opposed to one another that they rob the testimony of all probative force." *T.L.C. v. T.L.C.,* 950 S.W.2d 293, 295 (Mo. App. W.D.1997). It is properly invoked *only* when "the testimony is so 'inherently incredible, self-destructive or opposed to known physical facts' on a vital point or element that reliance on the testimony is necessarily precluded." *State v. Wright,* 998 S.W.2d 78, 81 (Mo.App. W.D.1999). Mere discrepancies or conflicts "are insufficient to invoke the doctrine;" *T.L.C.,* 950 S.W.2d at 295, rather, such inconsistencies in testimony simply affect the weight of the testimony and create "questions for jury resolution." *Id.; State v. Newberry,* 605 S.W.2d 117, 121 (Mo.1980).

Here, Mr. Davison argues that Deputy Whittington's testimony regarding finding these items in unit 18 and removing them from it is specifically contradicted by his later testimony that certain photographs show the property he found in unit 18. He claims the photographs show only a single ATV in that unit and show that the storage unit is too small in size to fit more than a single ATV. He argues, that, as a result, it is clear "proof that the deputy testified falsely" and warrants the court disregarding his testimony completely under the doctrine of "destructive contradictions." And, in the absence of the deputy's testimony, there is no evidence connecting him to these allegedly stolen items.

Mr. Davison's argument is based on a misstatement of the deputy's testimony. Contrary to Mr. Davison's allegations, the deputy did not testify that the picture of storage locker 18, showing the presence of only a single ATV, was a picture of all of the items found in the locker. In fact, he was never asked whether the picture of the storage locker showed all of the items contained in storage unit 18 at the time it was searched. Rather, the prosecutor asked Deputy Whittington, "[w]*ith the exception of the flat bed trailer that you previously identified as Exhibit 10–F*, are the other photographs of the interior of the storage unit 18 as it appear[ed] on the day you were there?" The deputy earlier identified Exhibit 10–F to be "the items from storage unit 18 loaded onto Boyles' flat bed wrecker." He testified that those items "are all the terrain vehicles, one tool box and one John Deere riding lawn mower." By ignoring the phrase "with the exception of the flat bed trailer that you previously identified as Exhibit 10–F," Mr. Davison entirely changed the meaning of Deputy Whittington's testimony. The deputy never testified that the items shown in the storage unit were all shown in the picture showing only an ATV in the unit. His testimony in this regard was not contradictory at all.

■ Similarly, Mr. Davison's argument that the photograph shows that there was no room in the storage unit for the Kawasaki and Polaris ATV's and the lawn mower, and that this contradicts Deputy Whittington's earlier statements that these charged items had been found in the storage unit, does not support application of the doctrine of destructive contradictions. The photograph is not testimony, and the doctrine only applies when a witness' own testimony contains inherently contradictory statements. In any event, at best, the photograph impeaches the credibility of Deputy Whittington. Issues of credibility such as this are not sufficient to invoke the doctrine of destructive contradictions. To the contrary, "credibility and the effects of conflicts or inconsistencies in [a witness's] testimony are questions for the jury." *Dulany*, 781 S.W.2d at 55.

### D. Suppression of Evidence.

In his final point on appeal, Mr. Davison claims that the trial court erred in overruling his motion to suppress evidence seized from storage units 16 and 18 and from his grandmother's home. The court below apparently denied Mr. Davison's motion to suppress the evidence seized from storage unit 18 on the ground that he lacked standing to challenge the search of the unit. The lower court seemingly based its conclusion that Mr. Davison lacked standing upon allegations by the prosecutor that Mr. Davison had verbally disavowed any interest in unit 18 to deputies at the time that the search warrants in this case were executed. Because on remand Mr. Davison may simply admit an interest in the storage locker for the limited purpose of his motion to suppress,[5] we need not reach the issue of standing here.

■ In his final point, Mr. Davison also challenges the sufficiency of the affidavit supplied by Sheriff's deputies to secure the warrant, claiming that it did not state adequate facts to demonstrate probable cause due to a lack of any assertions concerning the reliability of the confidential informant who supplied the deputies with facts, and because the informant's assertions were

---

**5.** It is well-settled that testimony given by a defendant in support of a motion to suppress cannot be admitted as evidence of his guilt at trial. *See Simmons v. United States,* 390 U.S. 377, 390, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *State v. Childress,* 828 S.W.2d 935, 940 (Mo.App. S.D.1992).

not corroborated by any investigation. Because this issue is again likely to arise on remand, we address it here.

The affidavit used to secure the warrant stated that Sheriff's deputies were contacted by a "confidential informant," who indicated he had been present at storage locker 18 when Mr. Davison opened it so that the informant could view the inside of the locker and see a four-wheeler that appeared to be new inside the storage locker. The confidential informant indicated that when his presence was noticed by Mr. Davison, Mr. Davison quickly closed the locker door, barring view of the contents of the storage unit. The affidavit makes no express representations concerning the "veracity" or "reliability" of the confidential informant.

We recently addressed a similar challenge to the sufficiency of an affidavit to supply probable cause in *State v. Mitchell*, 20 S.W.3d 546 (Mo.App. W.D. 2000). In *Mitchell*, we noted that "[w]hile it may be desirable that an affidavit provide information as to the source of an informant's knowledge, the failure to recite such information does not render the affidavit inadequate to support issuance of a warrant. To the contrary, it is well-established that probable cause is established by looking at the totality of the circumstances surrounding the warrant." *Id.* at 552, citing, *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983). In accordance with this principle, we recognized that "corroboration through other sources is often sufficient to provide a substantial basis for believing the informant's statements, even in the absence of detailed information about where the informant obtained his knowledge about Defendant." *Mitchell*, 20 S.W.3d at 552–53.

Here, the affidavit showed that police had already determined that Mr. Davison had, in fact, rented the storage units in question, and further that four-wheelers had been stolen, and that other items had been stolen from his workplace. Thus, facts recited in the deputy's affidavit partially corroborated the information provided by the confidential informant. When considered as a whole, the affidavit supplied probable cause upon which a warrant could issue, even in the absence of detailed information concerning the veracity and reliability of this informant.

For all of the above reasons, we reverse and remand for proceedings not inconsistent with this opinion.

Judge SMART, and Judge HOWARD, concur.