STATE of Missouri, Plaintiff–
Respondent,

v.

Josh R. McCALLUM, Defendant–
Appellant.

No. 24225.

Missouri Court of Appeals,
Southern District,
Division Two.

April 22, 2002.

Irene Karns, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General and Stephanie Morrell, Assistant Attorney General, Jefferson City, for respondent.

PHILLIP R. GARRISON, Presiding Judge.

Josh R. McCallum ("Defendant") was charged with two counts of burglary in the first degree, in violation of Section 569.160.[1] Following a bench trial,[2] he was found guilty on both counts and was sentenced to two concurrent terms of twelve years imprisonment. Defendant appeals.

■ In a court-tried case, the sufficiency of the evidence is determined by the same standard as in a jury-tried case, and that is whether or not there was sufficient evidence from which the trier of fact could have reasonably found guilt. *State v. Downen*, 3 S.W.3d 434, 435 (Mo.App. S.D. 1999). In determining whether or not there is evidence sufficient to support a finding of guilt, an appellate court may not weigh the evidence, but accepts as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and all contrary evidence and inferences are ignored. *Id.* Viewed in this light, the evidence shows:

On September 13, 1999, Mary Alice Campbell and her husband, Virgil Campbell, were asleep in their bedroom at their home in Neosho, Missouri. Around midnight, Mrs. Campbell heard the floor squeaking and awoke to find someone in the room near the foot of the bed. Mrs. Campbell said, "What in the hell are you doing?" Mrs. Campbell then said, "Virgil, there's a man or somebody in the house." Her husband awoke, and the intruder left the room. Mr. Campbell jumped up and ran after the intruder. The intruder went down into the basement, but Mr. Campbell was unable to catch up to him. Mrs. Campbell called 911.

Mr. Campbell went back to his bedroom to get his .357 revolver, but noticed it was gone. The Campbells realized that the intruder had taken some items from their home including the .357 revolver, approximately $150 in cash, two credit cards, and black leather gloves. It appeared that the intruder gained entry through the garage

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

2. After three witnesses testified, Defendant waived his right to a jury, and the trial concluded as a bench trial.

door in the basement, as the lock on the garage door was broken.

On September 13, 1999, at approximately 2:00 a.m., Allison Hamm ("Hamm") was asleep at her home, which was located on a dead-end street in Neosho, Missouri. Hamm awoke when she heard a noise that sounded like a "squeaky door." Hamm assumed her son had gotten up, but when she went to check on him, he was asleep. She "froze for a couple minutes," and then looked down the hallway and saw a light on in the laundry room. The light had not been on when she went to bed. She went back into her bedroom and grabbed a pistol. Hamm knew the squeakiest door was the one to a room used as an office, and believed that was where the noise had come from. As she walked down the hallway, she did not see anyone, but she could see that the interior door that led into the garage was open. Once inside the office, Hamm called 911. While in the office, she noticed that the file cabinet drawers had been pulled open. She also noticed that $8,000 in cash was missing from the fireproof box in the cabinet. Seventy dollars in cash had also been taken from her purse, which was sitting on top of the cabinet.

Jeremy Dry ("Dry"), Defendant's cousin, spoke with Detective Rick Marble ("Marble") of the Neosho Police Department and Terry Lankford ("Lankford"), an investigator with the Newton County prosecutor's office, about the burglaries at the Campbell and the Hamm house. Dry told them that he and Defendant had committed the burglaries. Dry went with Lankford and Marble to point out the houses he remembered burglarizing with Defendant. One of the three homes he identified had not reported a burglary, and the other two were the Campbell and Hamm residences.

Dry told Lankford and Marble that Defendant had asked him to help him with a burglary. It was dark outside, and Dry parked on the side of the road. Dry stayed in the car while Defendant got out of the car, went into a house, and came out running a few minutes later. Defendant got into the car, and said, "Let's get the hell out of here." Defendant then put a gun under the seat. Dry also stated that they went to another house on a dead-end street, and Defendant again got out of the car, went to the back of the house, and went inside. When Defendant returned to the car, he said to Dry, "Let's go, I've got money."

After Dry gave his statement to Lankford and Marble, he gave a videotaped statement that also incriminated Defendant. Lankford and Marble then asked Dry to call Defendant to see if Defendant would make incriminating statements on the phone. Dry did not want to and told Lankford and Marble that everything he had told them was not true, and that Defendant had not participated in the burglaries.

Dry pled guilty to two counts of burglary for his involvement in the Campbell and Hamm burglaries. At Dry's sentencing hearing, he testified under oath that his original statement and videotaped statement were true, and that Defendant broke into the homes while he stayed in the car. At Defendant's trial, Dry was declared a hostile witness. He testified that Defendant broke into the Campbell and Hamm residences, and that he acted as a lookout.

Bobby Tygart ("Tygart"), Defendant's friend, testified that in late 1999, Defendant told him that he had committed a burglary. Defendant told him that he had burglarized a house over by the hospital, that someone had woken up and chased him out of the house, and that he had taken a gun, money, and jewelry. Defendant also told Tygart about burglarizing an office space in a house, and he stated

that he had gotten some money from a little safe. Defendant stated that the people were home, and that he had committed this burglary around the same time as the other one. Defendant had $1,500 in cash on him that he said was taken from the safe.

In December 1999, Defendant and some of his friends approached Tygart. Defendant called him a "snitch for ratting on him" and started "swinging." Defendant told Tygart to keep his "mouth shut." On another occasion, after Tygart testified at Defendant's preliminary hearing, Defendant told Tygart that he would "never make it to trial."

Lankford also spoke with Defendant. He told Defendant that he had received information concerning some burglaries and wanted to talk with him. Defendant's response was that he "didn't do any burglaries that night." Lankford had not mentioned that the burglaries were committed at night or on any particular day. Defendant asked Lankford whether Dry had implicated Defendant. Defendant stated that he would "beat his ass." Defendant then denied any involvement in the burglaries, and stated that he thought Dry had implicated him because Dry knew that Defendant was good at "picking out houses." Defendant also stated that the only time he got caught was when "family ratted him out."

Defendant did not testify or present any witnesses at trial. His motion for a judgment of acquittal was denied, and he was found guilty on both counts. He appeals.

 In his sole point on appeal, Defendant contends that the trial court erred in finding him guilty and sentencing him on two counts of first-degree burglary because the evidence was insufficient to prove beyond a reasonable doubt that Defendant was guilty. Specifically, he argues that the testimony of Dry and Tygart was so unreliable as to be without probative value.

 In support of his argument that the testimony of Dry and Tygart was "so internally inconsistent as to lack probative value," Defendant cites *State v. Helmig*, 924 S.W.2d 562, 565 (Mo.App. E.D.1996). In *Helmig*, the court stated that the "destructive contradictions" doctrine applies when a witness's trial testimony is so internally inconsistent or contradictory that it is without probative value. *Id.* To apply, the inconsistencies or contradictions must be so diametrically opposed to one another as to preclude reliance thereon and rob the testimony of all probative force. *Id. See also State v. Davison*, 46 S.W.3d 68, 79 (Mo.App. W.D.2001); *State v. Jones*, 745 S.W.2d 748, 751 (Mo.App. E.D.1987). The doctrine comes into play only as to potential contradictions during a witness's testimony at trial, not to contradictions between trial testimony and prior statements. *Helmig*, 924 S.W.2d at 565. Any contradictions between a witness's trial testimony and any previous testimony or statements are for the court as the trier of fact to reconcile and consider when judging the witness's credibility. *Id.*

In the instant case, the "destructive contradictions" doctrine is inapplicable. Although Dry was reluctant to testify at trial and was declared a hostile witness, he did testify that Defendant had burglarized the Campbell and Hamm residences. There was nothing inconsistent or contradictory about his testimony. Although Dry told Lankford and Marble in a prior statement that Defendant was not involved in the burglaries, these contradictions are for the trier of fact to reconcile in determining credibility, as they are not contradictory trial testimony. *See Davison*, 46 S.W.3d at 79; *Helmig*, 924 S.W.2d at 565.

Further, there were no contradictory statements in Tygart's testimony at trial, or between that testimony and his earlier statements. Tygart testified that Defendant admitted burglarizing the houses. Defendant told him that he had burglarized a house over by the hospital one night, that someone had woken up and chased him out of the house, and that he had taken a gun, money, and jewelry. Tygart also testified that Defendant told him about burglarizing an office space in a house, and Defendant stated that he had gotten some money from a little safe.

 Here, it was within the trier of fact's province to believe all, some, or none of the witnesses' testimony in arriving at the verdict. *See State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989). We may not determine credibility of witnesses nor weigh the evidence. *See State v. Carroll,* 41 S.W.3d 878, 882 (Mo. banc 2001).

After reviewing the record in this case, we find that there was sufficient evidence from which the trier of fact could have reasonably found Defendant guilty as charged. Defendant's point is therefore denied.

The judgment of the trial court is affirmed.

PREWITT and RAHMEYER, JJ., concur.

